John Christopher DOYLE, Plaintiff,

v.

UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants.

Civ. A. No. 79–2723.

United States District Court,
District of Columbia.

July 22, 1980.

William M. Hoiles, Washington, D. C., for plaintiff.

Jason K. Kogan, Asst. U. S. Atty., Washington, D. C., for defendants.

## OPINION

HAROLD H. GREENE, District Judge.

The issue in this case is whether an individual who after his conviction in federal court became a fugitive from justice is entitled to processing of his request under the Freedom of Information Act, 5 U.S.C. 552 *et seq.*, for documents in the possession of the Department of Justice and the Federal Bureau of Investigation.

On February 3, 1965, plaintiff pleaded guilty to a violation of the Securities Act of 1933, 15 U.S.C. § 77e, in the United States District Court for the District of Connecticut. Thereafter, he was sentenced to a term of imprisonment for three years, all but three months being suspended.[1] Plaintiff failed to appear for service of his sentence, and on July 15, 1965, a bench warrant was issued for his arrest. Plaintiff is now residing in the Republic of Panama and, by his own admission, he is evading service of the warrant there.

In August, 1977, acting through an attorney, plaintiff requested "all or any part of the files, papers, documents, and memoranda of, about, and concerning John Christopher Doyle and/or Canadian Javelin Limited in the possession of the Department of Justice." After some delay, the Department of Justice and the FBI advised plaintiff's attorney that they were suspending processing of the request because of plaintiff's status as a fugitive. This suit followed, and the matter is now before the Court on defendants' motion to dismiss and plaintiff's motion for summary judgment.

Plaintiff's position is relatively simple and straightforward.[2] The Freedom of Information Act provides in subsection (a)(3) that each government agency upon receipt of "any request . . . shall make the records promptly available to any person,"[3] and plaintiff argues that the statute means just what those words say. He also relies upon legislative history and court decisions indicating that the Act was not intended to be unavailable to persons with a special interest in the records being requested, to foreign nationals, to those involved in litigation, or to those convicted of felonies. See *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975); *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131 (4th Cir. 1977).[4]

There appear to be no precedents on the issue before the Court, and the case must therefore be decided on the basis of general principles. For the reasons discussed below, the Court has concluded that it is not bound to require government departments to comply with Freedom of Information Act requests from those who are fugitives from justice.

Courts have long refused to entertain various types of legal proceedings when brought by persons who are fugitives. In 1876, the Supreme Court ordered a case removed from its docket when it came to its attention that the petitioner had escaped from custody. *Smith v. United States*, 94 U.S. 97, 24 L.Ed. 32 (1876). More recently, in *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970), the Court followed a similar practice, explaining (396 U.S. at 366, 90 S.Ct. at 498):

> While . . . an escape does not strip the case of its character as an adjudicable

1. The court also imposed a fine of $5,000 and probation for a period of one year.

2. Plaintiff's alternative argument, that the Department of Justice should have promulgated a rule providing that it would not process FOIA requests made by fugitives is without merit. The Department was applying general law (see *infra*) and no special rule was necessary.

3. Unless the documents are subject to a specific subject matter exemption—an issue which

defendants have not explored and on which they admittedly do not rely.

4. In this connection, plaintiff has noted a recent request to the Congress by the Director of the FBI for an amendment to the law which would authorize the withholding of information from felons and from resident aliens, contending that this request constitutes an admission that without special statutory exemption legislation all requests must be honored.

844

case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims.

See also, *Eisler v. United States*, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949);[5] *United States v. Tremont*, 438 F.2d 1202, 1203 (1st Cir. 1971); *United States v. Sotomayer*, 592 F.2d 1219, 1220 n. 1 (2d Cir. 1979); *United States v. Sacco*, 571 F.2d 791, 793 (4th Cir. 1978); *United States v. Wood*, 550 F.2d 435, 437–8 (9th Cir. 1976); *United States v. Shelton*, 482 F.2d 848, 849 (5th Cir. 1973).[6]

Plaintiff makes three points in support of his contention that these decisions are not applicable here. None of these contentions is well taken.

First. Plaintiff argues that the *Molinaro* line of cases is based on concepts of mootness which are inapplicable to the present situation. That is not correct. The Court in *Molinaro* expressly disavowed any reliance upon lack of a case or controversy, basing its decision instead on what can best be described as equitable principles.

Second. Plaintiff contends next that the precedents involved situations where the complainant was seeking relief directly related to his initial conviction. An analysis of the decisions shows this contention, too, to be factually erroneous. For example, in *Dawkins v. Mitchell*, 437 F.2d 646 (D.C.Cir. 1970), the plaintiffs, who had not been convicted of any charge, brought civil actions to restrain the enforcement of fugitive warrants outstanding against them, but the Court of Appeals upheld a dismissal based upon their refusal to subject themselves to the jurisdiction of the District Court.[7] In *United States v. Commanding Officer*, 496 F.2d 324 (1st Cir. 1974) injunctive and declaratory relief was being sought by way of a petition for writ of habeas corpus against enforcement of an Army regulation. While the matter was pending, the petitioner absconded from custody and indeed from the Army, and the court had to consider whether the case survived. Declining to decide the matter on mootness grounds, it stated that a person who seeks "to invoke the processes of the law while flouting them [is] [not entitled] 'to call upon the resources of the court for determination of his claims.'" And in *Broadway v. City of Montgomery*, 530 F.2d 657 (5th Cir. 1976), the Court of Appeals for the Fifth Circuit refused to hear an appeal from a fugitive[8] who sought damages and injunctive relief from an allegedly illegal state wiretap.

Third. Plaintiff argues that, whatever may be the rule with respect to other areas of the law, under the Freedom of Information Act an individual has an absolute right to access to records, irrespective of equitable considerations. To be sure, the Court of Appeals for this Circuit has indicated in several cases that a district court "has no equitable jurisdiction to deny disclosure on grounds other than those [set] out under

5. In that case, Mr. Justice Frankfurter, concurring, stated that "[i]f legal questions brought by a litigant are to remain here, the litigant must stay with them. When he withdraws himself from the power of the Court to enforce its judgment, he also withdraws the questions which he had submitted to the Court's adjudication. The questions brought by Eisler have evaporated so far as the Court's power to deal with them is concerned because the rights and obligations of a litigant no longer depend on their answer. The Court therefore lacks jurisdiction as it lacked jurisdiction to answer [questions submitted to the court by President Washington in the early days of the Republic]. Not to dismiss the case for want of jurisdiction can only mean that the Court has jurisdiction and therefore must retain the case. And this, in turn, can only mean that the Court's eventual action must await the pleasure of Eisler and

of every future litigant who, having invoked the Court's jurisdiction, withdraws himself beyond the means of asserting it."

6. The District Court for the District of Connecticut likewise refused to reopen the judgment against plaintiff until he appeared before the court.

7. Warrants had been issued in Louisiana under 18 U.S.C. § 1073 for alleged flight from a Louisiana state prosecution.

8. That plaintiff, like the plaintiff in *Dawkins v. Mitchell, supra*, was a fugitive from state process, and the refusal of the federal courts to grant him relief on his federal claims can therefore hardly be said to be related to any criminal conviction or to mootness.

one of the Act's [inherent exceptions]." *Soucie v. David*, 448 F.2d 1067, 1076 (D.C. Cir.1971); *Getman v. NLRB*, 450 F.2d 670, 678 (D.C.Cir.1971); see also *Tax Analysts and Advocates v. IRS*, 505 F.2d 350 (D.C. Cir.1974). These decisions, however, involved appeals to equitable discretion in wholly different circumstances from those present here. More significantly, there is direct precedent from the Supreme Court and from the Court of Appeals—some of it subsequent to the decisions noted above—which points in the opposite direction.

In *Renegotiation Board v. Bannercraft Clothing, Inc.*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974) the Supreme Court stated (415 U.S. at 20, 94 S.Ct. at 1038)

> With the express vesting of equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court.

■ Likewise in *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 154, 100 S.Ct. 960, 971, 63 L.Ed.2d 267 (1980), the Court again stated that the equitable discretion of the district courts was not limited or diminished by the passage of the Freedom of Information Act. See also *Reporters Committee for Freedom of the Press v. Sampson*, 591 F.2d 944, 949 (D.C.Cir.1978).

It seems clear from these decisions that courts are not precluded in appropriate circumstances from exercising their otherwise existing equitable powers when passing upon claims under the FOIA. What remains to be decided, then is (1) whether the present case is one in which the Court may refuse to require the production of records, and (2) whether it should do so. In the view of this Court, the answer to both questions must be in the affirmative, irrespective of whether the "exceptional circumstances" test of *Soucie v. David, supra*, or some lesser standard is applied.

■ As noted above, courts have on many occasions refused to entertain or to process lawsuits brought by individuals who were or became fugitives from justice, although with respect to some of these proceedings—*e. g.*, criminal appeals with their quasi-constitutional dimensions [9]—there existed the strongest possible claim to the exercise of jurisdiction. If the courts may invoke their inherent equitable powers to refuse to entertain appeals from fugitives who are seeking to overturn criminal convictions, they surely may do so likewise with respect to those fugitives who merely seek relief under the Freedom of Information Act.

■ It is the purpose of that Act to promote the accountability of government by opening the actions of its officials to public scrutiny.[10] To that end, government documents are made widely available, and when government resists a legitimate request, the courts are available to enforce the rights established by the statute. But one who has removed himself from the jurisdiction of the courts [11] has no claim upon them for an order which would require the delivery of the files of the United States government to his hiding place.

■ From time immemorial, courts of equity have applied the maxim that those who demand equity must come into court with clean hands.[12] The hands of this plaintiff

---

9. *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

10. *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Tennesseean Newspapers, Inc. v. FHA*, 464 F.2d 657 (6th Cir. 1972).

11. The District Court for the District of Connecticut released plaintiff on his personal recognizance upon his sworn promise to return when called upon to do so. Instead, plaintiff fled to Central America. He apparently has since renounced his American citizenship to become a citizen of Panama—an indication that he does not intend ever to return.

12. See, *e. g.*, *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 244, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933); *Udall v. Littell*, 366 F.2d 668, 675 (D.C.Cir.1966).

are sullied with his contempt for the tribunals whose assistance he is seeking to invoke. Unless and until he presents himself for service of the sentence lawfully imposed upon him, this Court will exercise the discretion vested in it by refusing to assist him with his demands. Accordingly, the complaint will be dismissed.