**226**

UNITED STATES, Appellee,

v.

**Charles James SCHRECK, Seaman Apprentice, U. S. Navy, Appellant.**

Dkt. No. 38,035.

NCM No. 78—1650.

U. S. Court of Military Appeals.

Feb. 2, 1981.

See also, 10 M.J. 374.

For Appellant: *Lieutenant David S. Durbin, JAGC, USNR* (argued and reargued).

For Appellee: *Lieutenant J. G. VanWinkle, JAGC, USNR* (argued and reargued); *Commander T. C. Watson, Jr., JAGC, USN* (on brief).

For Amicus Curiae on behalf of Appellant: *Eugene R. Fidell,* Esq. (argued and reargued); *David F. Addleston,* Esq. (on brief).

*Opinion*

EVERETT, Chief Judge:

Appellant was tried on August 17, 1978, by a special court–martial, military judge alone, for two unauthorized absences, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886. Having been found guilty pursuant to his pleas, he was sentenced to a bad–conduct discharge, confinement at hard labor for 4 months, forfeiture of $200.00 pay per month for a like period, and reduction to pay grade E–1. In accord with a pretrial agreement, the convening authority approved the discharge and reduction portions of the sentence, but remitted the confinement and forfeitures in excess of 3 months. The supervisory authority approved the sentence as reduced by the convening authority; and the United States Navy Court of Military Review affirmed.

Prior to sentence Schreck made an unsworn statement, wherein he stated (emphasis supplied):

*I would like to remain in the Navy, and I hope I am given the opportunity to do so.* I've got the makings of a good sailor and I have good intentions. I would like a chance to demonstrate my potential to the Navy. I no longer want to run away from my problems or responsibilities.

I know I am going to be confined for a long time. I know I've got it coming for what I did. Being in the brig, I think, might even help me think about what I am going to do and what I have done. I hope I can–you can see your way clear to let me stay in the Navy and make it up to them.

Trial defense counsel's presentencing argument included these comments:

We feel that at the age of 20, it's not too late for him to be an asset to the Navy and to his family. We feel that the Court should afford the accused the opportunity

to do this by allowing him to remain in the Service. Certainly, for the period of the UA, it would be unreasonable to ask for no confinement. We feel that some reasonable period of confinement is in order. He has to pay for what he's done. At the same time, it should be balanced against the situation he was in at the time, the kind of person he was at the time he joined the Navy, and the potential that he still has to be an asset. Accordingly, we ask that he not be discharged but be allowed to remain in and serve out the rest of his enlistment.

Although the military judge included a bad–conduct discharge in the sentence, he recommended suspension of the discharge in these terms:

> However, I recommend strongly to the Convening Authority that the bad–conduct discharge, one month's confinement at hard labor, and one month's forfeiture be suspended for a period of one year from the date of the Convening Authority's action.

In his action on the case the convening authority, on September 21, 1978, "approved as adjudged" "that portion of the sentence which provides for a Bad–conduct discharge and a reduction in rate" and he ordered the execution thereof. In his action he noted, "The recommendation of the Military Judge was considered in approving the sentence."

The review by the staff judge advocate informed the supervisory authority that since a sentence which includes an unsuspended bad–conduct discharge may not be ordered into execution until review is completed, the "portion of the Convening Authority's action which purports to order the sentence executed is a nullity." He stated that, like the convening authority, he had "considered the . . . recommendation [of the military judge] in making [his own] recommendation with respect to the sentence."

Thereafter, he advised, "In view of the serious nature of the accused's conduct and considering his past record, it is recommended that the sentence as approved by the Convening Authority, be approved." As required by *United States v. Goode*, 1 M.J. 3 (C.M.A.1975), a copy of this review was served on appellant's trial defense counsel on October 12, 1978.

Meanwhile on September 11, 1978, appellant had executed a mimeographed form entitled "Appellate Rights Statement" which outlined the various steps in appellate review. It noted that Schreck's trial defense counsel had advised

> that it is his responsibility to represent me during the initial and intermediate review of my *Special* court–martial conviction. In this regard, he has advised me of my opportunity to request clemency and deferment of any sentence to confinement. He has also advised me of his responsibility to familiarize himself with any issues that should be raised in the appeal of my conviction, to prepare a brief with regard to these issues when appropriate, *and to examine the staff judge advocate's review for error.*

(Emphasis supplied). At the end of the form, Schreck specifically indicated that he desired to be represented by appellate defense counsel.[1]

On September 11, 1978, Schreck's trial defense counsel also executed a mimeographed form, headed "Counsel's Statement." This document, acknowledged by appellant's signature, contains this recital by counsel (emphasis supplied):

> Furthermore, I have advised him that I will examine the record of trial as well as the staff judge advocate's post–trial review thereof, *that I will prepare an appropriate reply to the staff judge advocate's post–trial review,* that I will note, for further consideration by any attorney

---

1. On that same date appellant executed another mimeographed form, entitled Special Power of Attorney, wherein he authorized appellate defense counsel of record "to accept service of the United States Navy Court of Military Re-

view decision in my case after notification to my appellate defense counsel of record by the Judge Advocate General that he has been unable to accomplish personal service on me."

designated to relieve me, any errors which occurred at trial and which I believe may be reasonably raised on review, and that I will/will not [sic] prepare a brief concerning these matters pursuant to Article 38(c), Uniform Code of Military Justice.

After service on him of the staff judge advocate's review, trial defense counsel filed his *Goode* response within the prescribed five calendar days. The response read simply:

Subj: *U. S. v. SCHRECK*; Comments to SJA's review in the case of

1. I concur in your opinion and recommendations.

This *Goode* response is the subject of the petition for review which has been submitted in behalf of Schreck by his appellate defense counsel and granted by us. 10 M.J. 114 (November 14, 1980). *See also United States v. Schreck*, 9 M.J. 217 (C.M.A.1980). In the petition, reliance is placed on the principle, enunciated in *United States v. Russell*, No. 76 1703 (N.C.M.R., Nov. 22, 1976),[2] that after trial an appellant's lawyer may not turn against him—even if only "inadvertently." Of course, that principle is clearly correct and conforms to the requirements imposed on counsel by *United States v. Palenius*, 2 M.J. 86 (C.M.A.1977). Furthermore, the "Appellate Rights Statement" which was furnished Schreck after his trial is calculated to induce the expectation that his trial defense counsel will be working in his behalf—including an examination of the staff judge advocate's review for error. Indeed, the "Counsel's Statement" contains an explicit, signed representation by trial defense counsel to this very effect.

The Court of Military Review dealt with the matter by suggesting that the *Goode* response was, "as stated by appellate defense counsel, an 'inartful word choice rather than a decision to turn against SA Schreck,'" and added: .

We concur with the evaluation of appellate defense counsel that, "Certainly, counsel must merely have intended to indicate that he had no comments to make." We further conclude it was interpreted that way by all concerned.

However, we find nothing in the record of trial to reveal how the staff judge advocate interpreted the defense counsel's *Goode* response when he received it, nor whether the supervisory authority took the response—or any interpretation thereof—into account at all when he decided, as had the staff judge advocate and convening authority before him, that the military judge's recommendation for suspension of the punitive discharge should be considered but rejected.

The reply filed to the petition by appellate government counsel suggests that the concurrence by trial defense counsel in the staff judge advocate's review "could have several explanations." One such explanation then offered is that, "Perhaps appellant had a change of heart and wanted to get out of the Navy." If appellate government counsel can now offer such an "explanation," then it seems difficult to accept the conclusion of the court below that "all concerned" interpreted the response of trial defense counsel as the equivalent of "no comments to make." It is conceivable that the staff judge advocate or the supervisory authority may have inferred that, contrary to Schreck's previous expression, appellant now wished to end his service in the Navy. Indeed, such an inference could have been drawn quite readily, since if trial defense counsel had no criticism of the review, he was under no obligation to file any comments or, if he wished to file something, could merely have written, "No comments."

■ The loyalty of defense counsel to his client—before, during, and after trial—is a cornerstone of military justice. *See United States v. Palenius, supra. See also Arsenault v. Massachusetts*, 393 U.S. 5, 89 S.Ct. 35, 21 L.Ed.2d 5 (1968); *Anders v. Califor-*

---

2. A copy of this unpublished opinion has not been furnished to this court. Counsel is reminded of the obligation to do so. Rule 21, Rules of Practice and Procedure, United States Court of Military Appeals, 4 M.J. CXI.

*nia,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 1377 (1967). Even an inadvertent action by counsel which runs contrary to that norm demands prompt corrective action. In our view, the Court of Military Review failed to attach adequate importance to the error committed here by counsel.

Was the error prejudicial? Where an action by defense counsel is involved that on its face appears contrary to his client's interests–such as concurring in a recommendation contrary to his client's express wishes [3]–we would not be disposed to engage in nice calculations as to the existence of prejudice. However, under the circumstances of the case at hand we need not resolve that issue at this time.

■ Previously, this Court was asked by appellate government counsel to dismiss the petition filed in Schreck's behalf on the ground that his unauthorized absence precluded the lawful filing of a petition for review in his behalf, under Article 67(b)(3), UCMJ, 10 U.S.C. § 867(b)(3). By divided vote, we denied the government's motion. However, in so doing, the Court did not intend to suggest that we lack the power to dismiss, at some time after filing, a petition for review filed for an accused who is absent without authority. Indeed, there is ample precedent for exercising sound judicial discretion to dismiss a criminal appeal when it appears that appellant has escaped from lawful confinement during the pendency of his appeal. *See Estelle v. Dorrough,* 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975); *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970). In such instances, an opportuni-

ty has sometimes been given to allow a return to custody by the appellant. *Bohanan v. Nebraska,* 125 U.S. 692, 31 L.Ed. 854 (1887); *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876).

We have received no indication that Schreck's status of unauthorized absence has changed after the proper filing by appellate defense counsel of the petition for review. Accordingly, it is appropriate to dispose of the petition for review in this case in the same manner that the appeal was handled in *United States v. Sperling,* 506 F.2d 1323, 1345 n. 33 (2nd Cir. 1974), *cert. denied,* 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975). Thus, unless counsel for Schreck notifies the Court within 30 days from the date of this opinion that he has returned to military control, then his petition for review shall be dismissed with prejudice.

FLETCHER, Judge (concurring in the result):

I concur with the disposition of this matter. I make no observation as to the other matters which are not essential to the resolution of this matter treated in Chief Judge Everett's opinion.

COOK, Judge (dissenting):

If accused has returned to military control, that return does not expunge his extended unauthorized absence. I see no reason to engage in a futile act, and I would, therefore, now deny the petition for grant of review.

---

3. We find nothing in the record of trial which up to this point suggests that Schreck had repudiated his stated desire to remain in the Navy, had communicated any such change of heart to his counsel, or had authorized the filing by counsel of any statement intimating he did not wish to remain in the Navy.