JOHN BERKERY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT*

Docket Nos. 13900-82, 22182-82. Filed February 16, 1988.

---

*Supplemental Opinion, 91 T.C. 179 (1988).

*Ronald F. Kidd, Thomas W. Ostrander,* and *Mark E. Cedrone,* for the petitioner.

*Ina S. Weiner* and *Lynn L. Casimir,* for the respondent.

WELLS, *Judge:* For the taxable year 1980, respondent determined a deficiency in petitioner's Federal income tax in the amount of $364,237.29 and an addition to tax under section 6653(a)[1] in the amount of $18,211.85. For the taxable year 1981, respondent determined a deficiency in petitioner's Federal income tax in the amount of $209,606, an addition to tax under section 6651(a)(1) in the amount of $20,961, and an addition to tax under section 6653(a)(1) in the amount of $10,480.00.[2]

The issues presented for our decision are as follows:

(1) Whether petitioner's legal residence for purposes of section 7482(b) was located in Philadelphia, Pennsylvania, at the time the petitions in these cases were filed;

(2) Whether these cases should be dismissed because petitioner is a fugitive from justice;

(3) Whether respondent violated grand jury secrecy rules, and if so, whether the violation causes certain evidence relied upon by respondent to be excluded and the burden of going forward in these cases on the issues concerning deficiencies in Federal income taxes to shift to respondent; and

(4) Whether petitioner failed to report taxable income for taxable years 1980 and 1981 from alleged transactions in violation of Federal drug laws, and is liable for the aforementioned deficiencies in and additions to Federal income taxes.

---

[1] All section references are to the Internal Revenue Code as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] For petitioner's taxable years in issue, respondent did not determine additions to tax under sec. 6653(b).

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and exhibits attached to the stipulations are incorporated herein by reference.

Petitioner claimed a legal residence in Philadelphia, Pennsylvania, at the time he filed his petitions with this Court.

On January 13, 1982, petitioner was indicted for violating Federal drug laws. Petitioner was not arrested upon being indicted because he was a fugitive from justice at such time. Petitioner presently remains a fugitive from justice.[3]

Respondent's determinations in these cases are based upon his claim that petitioner failed to report taxable income for the taxable years 1980 and 1981 from alleged transactions involving the possession and distribution of phenyl-2-propanone ("P-2-P"), an ingredient used to manufacture methamphetamine.[4]

Respondent issued a statutory notice of deficiency for the 1980 taxable year on March 18, 1982, and issued a statutory notice of deficiency for the 1981 taxable year on June 10, 1982.[5] Subsequently, petitioner's counsel filed petitions with the Court in a timely manner. These cases were tried in Philadelphia, Pennsylvania.

## OPINION

### Petitioner's Legal Residence

The first issue presented for our decision is whether petitioner's legal residence for purposes of section 7482(b)[6]

---

[3]The parties stipulated to the facts regarding petitioner's status as a fugitive from justice.

[4]Petitioner was indicted for conspiring to distribute and possess with the intent to distribute P-2-P, in violation of 21 U.S.C. sec. 846, and for possessing with the intent to distribute P-2-P, in violation of 21 U.S.C. sec. 841, but was not indicted for distributing P-2-P.

[5]The statutory notice of deficiency for the 1980 taxable year was issued after respondent made a jeopardy assessment for such taxable year, and the statutory notice of deficiency for the 1981 taxable year was issued after respondent made a termination assessment for such taxable year.

[6]SEC. 7482. COURTS OF REVIEW.

(b) VENUE.—

(1) IN GENERAL.—Except as otherwise provided in paragraphs (2) and (3), such decisions [of the United States Tax Court] may be reviewed by the United States court of appeals for the circuit in which is located—

(A) in the case of a petitioner seeking redetermination of tax liability other than a corporation, the legal residence of the petitioner,

\* \* \* \* \* \* \* ·

was located in Philadelphia, Pennsylvania, at the time the petitions in these cases were filed. For purposes of that section, the term "residence" means domicile. *Brewin v. Commissioner,* 72 T.C. 1055, 1059 (1979), revd. and remanded on other issues 639 F.2d 805 (D.C. Cir. 1981). We find that, for purposes of these cases, petitioner's domicile at the time the petitions in these cases were filed was in Philadelphia, Pennsylvania.

In *Brewin v. Commissioner,* 72 T.C. at 1059, we enumerated the following general principles for determining the domicile of an individual petitioner:

Domicile is based on physical residence conjoined with the intent to remain thereat, at least for a time. *Texas v. Florida,* 306 U.S. 398, 424 (1939). Statements of intention are evidence of domicile, but are given slight weight when such statements conflict with conduct. Relevant to the determination is conduct with respect to establishment of a principal home, its furnishings and objects, family history and familial associations, location of interest, and time spent thereat.

Petitioner has the burden of proof to establish domicile at the time his petitions were filed. Rule 142(a). "Where one lives is prima facie evidence of domicile." *Krasnov v. Dinan,* 465 F.2d 1298, 1300 (3d Cir. 1972), citing *District of Columbia v. Murphy,* 314 U.S. 441 (1941).

In the present cases, respondent called Ronald Raiton (Raiton), who testified on cross-examination that Raiton delivered P-2-P to petitioner "near [petitioner's] home up in the Northeast part of Philadelphia." Moreover, respondent stated on brief that "Petitioner abandoned his *residence* in Philadelphia prior to petitioning the Court and has not established that he is domiciled in Philadelphia." (Emphasis supplied.) Respondent's statement seems to concede that, at the very least, petitioner had a physical residence in Philadelphia prior to the time petitioner became a fugitive from justice. Finally, the tax returns filed by petitioner for

If for any reason [subparagraph (A) does not apply] * * * , then such decisions [of the United States Tax Court] may be reviewed by the Court of Appeals for the District of Columbia. For purposes of this paragraph, the legal residence * * * referred to herein shall be determined as of the time the petition seeking redetermination of tax liability was filed with the Tax Court * * *

(2) BY AGREEMENT.—Notwithstanding the provisions of paragraph (1), such decisions may be reviewed by any United States Court of Appeals which may be designated by the Secretary and the taxpayer by stipulation in writing.

the taxable years in issue list a mailing address in Philadelphia, Pennsylvania.

Based upon the record as a whole, we find that petitioner lived in Philadelphia, Pennsylvania, prior to the time he became a fugitive from justice. There is no evidence in the record that would indicate that petitioner's domicile was not in Philadelphia prior to the time petitioner became a fugitive from justice.[7] Thus, we find that petitioner's domicile was in Philadelphia, Pennsylvania, prior to the time the petitions in these cases were filed.

Having determined petitioner's domicile prior to the time the petitions in these cases were filed, we must now determine petitioner's domicile at the time the petitions in these cases were filed. Sec. 7482(b). "Once domicile is established, the question of whether that domicile has been abandoned arises." *Brewin v. Commissioner,* 72 T.C. at 1059. The party alleging that an earlier domicile was abandoned in favor of a later one carries the burden of proof on that issue. *Texas v. Florida,* 306 U.S. 398, 427 (1939); *Mitchell v. United States,* 88 U.S. (21 Wall.) 350, 353 (1874); *Slaughter v. Toye Brothers Yellow Cab Co.,* 359 F.2d 954, 955 (5th Cir. 1966). More accurately stated, when a party alleges that a domicile was abandoned, the burden of going forward with evidence on the issue of abandonment of domicile shifts to that party. *Slaughter v. Toye Brothers Yellow Cab Co., supra* at 955.

Respondent may not rely upon petitioner's status as a fugitive from justice as proof that a place other than Philadelphia became petitioner's domicile. Petitioner's fugitive status, standing alone, does not indicate that petitioner departed from Philadelphia and established a domicile elsewhere. Cf. *Lloyd v. Loeffler,* 694 F.2d 489, 490 (7th Cir. 1982).

Based upon the foregoing, we find that petitioner's domicile, and therefore his residence for purposes of section 7482(b), was located in Philadelphia, Pennsylvania, at the time the petitions in these cases were filed with this Court.

---

[7] Petitioner became a fugitive from justice prior to the filing of the petitions of these cases.

## Dismissal of Cases

The next issue in these cases is whether we should dismiss these cases because of petitioner's status as a fugitive from justice, as argued by respondent. Petitioner argues that we should not exercise our discretion to dismiss these cases. Based upon the analysis that follows, we dismiss petitioner's cases due to his status as a fugitive from justice.

In *Molinaro v. New Jersey,* 396 U.S. 365 (1970) (per curiam), the Supreme Court dismissed a defendant's appeal of a criminal conviction because the defendant was a fugitive from justice. The Court stated that the defendant's status as a fugitive "disentitles the defendant to call upon the resources of the Court for determination of his claims." *Molinaro v. New Jersey, supra* at 366. See also *Bohahan v. Nebraska,* 125 U.S. 692 (1887); *Smith v. United States,* 94 U.S. 97 (1876).

Courts have rejected the argument that *Molinaro* only applies to appeals from criminal convictions. E.g., *Ali v. Sims,* 788 F.2d 954, 958-959 (3d Cir. 1986) (after reversing District Court's grant of partial summary judgment in favor of plaintiff in a civil rights suit, the Court of Appeals for the Third Circuit held that plaintiff's fugitive status disentitled plaintiff to a new trial on the issue of defendant's liability); *Conforte v. Commissioner,* 692 F.2d 587, 589-590 (9th Cir. 1982), stay denied 459 U.S. 1309 (1982) (taxpayer appealed this Court's decision in favor of the Commissioner, and the appeal was dismissed by the appellate court because the individual became a fugitive from justice after the appeal was filed); *Doyle v. United States Department of Justice,* 494 F. Supp. 842, 845 (D. D.C. 1980), affd. per curiam 668 F.2d 1365 (D.C. Cir. 1981), cert. denied 455 U.S. 1002 (1982) (proceeding instituted by plaintiff to obtain documents under the Freedom of Information Act was dismissed by the District Court due to plaintiff's status as a fugitive from justice).[8] In fact, it has been stated that *Molinaro* "should apply with greater force

---

[8]See also *United States v. $129,374,* 769 F.2d 583 (9th Cir. 1985); *Schuster v. United States,* 765 F.2d 1047 (11th Cir. 1985); *United States v. $45,940,* 739 F.2d 792 (2d Cir. 1984); *Broadway v. City of Montgomery, Alabama,* 530 F.2d 657 (5th Cir. 1976).

in civil cases where an individual's liberty is not at stake."
*Conforte v. Commissioner*, 692 F.2d at 589.

Petitioner argues that we should not exercise our discretion to apply *Molinaro* to the cases at bar because petitioner is represented by counsel and "there is no requirement pursuant to any relevant authority that a petitioner be present for his trial before this Court." Petitioner misses the point of *Molinaro* and the civil cases in which *Molinaro* was applied. Those cases were not dismissed because of the failure of the litigants in those cases to be present at the civil trial; they were dismissed because the litigants were fugitives from justice.[9]

Petitioner has refused to submit to the jurisdiction of the Federal courts for trial on charges that he violated Federal drug laws, yet he calls upon the resources of this Court in order to dispute deficiencies in and additions to Federal income taxes that arose out of his alleged illegal drug activities.[10] The Court of Appeals for the Third Circuit stated in *Ali v. Sims,* 788 F.2d at 959, "Particularly in this age of overcrowded dockets and court backlogs, it is unreasonable to expect a court to expend its scarce resources on one who has blatantly disregarded the court's procedures." We share those concerns, as well as those expressed by the Supreme Court in *Molinaro.*

Petitioner wishes to pick and choose which of the benefits and burdens of the U.S. legal system apply to him. Petitioner's contemptuous behavior toward the Federal courts, however, disentitles him to call upon the resources of this Court in the instant cases. *Molinaro v. New Jersey,* 396 U.S. at 366. We deem that behavior sufficient cause to exercise our discretion to dismiss these cases. Rules 123(b),

---

[9]This Court has been faced with the issue of whether we should apply *Molinaro v. New Jersey,* 396 U.S. 365 (1970) (per curiam), to dismiss cases brought by fugitives from justice in two Memorandum Opinions of this Court. In *Terpil v. Commissioner,* T.C. Memo. 1985-350, and *Vesco v. Commissioner,* T.C. Memo. 1979-369 (we assumed for purposes of our analysis that the taxpayer was a fugitive, even though we questioned whether the taxpayer was, in fact, a fugitive), we refused to exercise our discretion to apply *Molinaro* to dismiss the cases. *Terpil* and *Vesco* are, however, distinguishable from the instant cases. In *Terpil* and *Vesco,* the fugitive taxpayers had spouses who were *not* fugitives from justice but would have been bound by the dismissal of the cases. Petitioner does not have a spouse who would be affected similarly by a dismissal of the instant cases.

[10]Since these cases are related to the criminal charges forming the basis of petitioner's fugitive status, we need not address whether nexus is a requirement for the applicability of *Molinaro.* See *United States v. $129,374,* 769 F.2d at 588; *Schuster v. United States,* 765 F.2d at 1049-1050, and cases cited therein at n. 13.

123(d). Thus, we will enter a decision for respondent for the full amount of the deficiencies in and additions to Federal income taxes determined by respondent. If, however, within 30 days after this written opinion has been served, petitioner submits himself to the jurisdiction of the Federal courts for purposes of a trial on the charges for which he has been indicted and files a motion with this Court to vacate the decisions in these cases, we will consider his cases on the merits of the other issues he has advanced. In view of our dismissal of petitioner's cases, we need not now expend our resources any further to consider those issues.

To reflect the foregoing,

*Decisions will be entered for the respondent.*

Reviewed by the Court.

STERRETT, NIMS, KÖRNER, HAMBLEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, and WHALEN, *JJ.*, agree with the majority opinion.

SHIELDS, *J.*, dissents.

RUWE, *J.*, did not participate in the consideration of this case.

---

HAMBLEN, *J.*, concurring: I agree with the majority, but Judge Whitaker raises important issues in his dissent which impel me to respond. For the reasons set forth below, I believe that the majority properly assumes that we have the power to dismiss these cases due to the petitioner's fugitive status, and that the power was properly applied.

## Power of the Court

Section 7453 provides, in relevant part, that "the proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure * * * as the Tax Court may prescribe." Rule 123(b), promulgated pursuant to section 7453, provides, "For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court *or for other cause which the Court deems sufficient,* the Court may

dismiss a case at any time and enter a decision against the petitioner."

In the instant cases, the majority simply has interpreted the language contained in Rule 123(b), "or for other cause which the Court deems sufficient," to allow the Court to dismiss a case due to a taxpayer's status as a fugitive from justice. The majority's use of Rule 123(b) is based upon a long line of civil cases in which *Molinaro v. New Jersey*, 396 U.S. 365 (1970) (per curiam), was applied by various Federal courts.

Nevertheless, the dissent states, "The majority's action is not predicated upon express statutory authority," and "If we have the power to deny petitioner access to our court, we must support that action upon our inherent powers as do Article III courts." I do not think the Court must rely upon inherent powers to dismiss the instant cases. See *Braley v. Campbell*, 832 F,2d 1504, 1510 (10th Cir. 1987) ("Because we have specific statutes and rules that authorize the imposition of monetary sanctions on attorneys, we need not explore the entire parameters of the courts' inherent power to impose sanctions.").[1] Instead, the majority's action in these cases is authorized by our rules of court, promulgated pursuant to the statutory delegation of power by Congress. The Federal courts that have based their application of *Molinaro* on inherent powers apparently were required to do so because there was not a rule of court that was broad enough to support the courts' application of *Molinaro*. See, e.g., *Ali v. Sims*, 788 F.2d 954, 959 (3d Cir. 1986) ("At all events, the principles of *Molinaro* intersect with the principles underlying Fed.R.Civ.P. 37 & 41, which render a party's misconduct a basis for the dismissal of his case.").[2]

Furthermore, the dissent's reliance upon *Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3d Cir. 1985) (en banc), for the proposition that we do not have the power to dismiss the instant cases, appears misplaced.

---

[1]Even Judge Whitaker recognizes the principle set forth in *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987), when he states that "powers which a court possesses only by virtue of a statutory grant are not inherent powers."

[2]The court in *Ali v. Sims*, 788 F.2d 954, 959 (3d Cir. 1986), did not rely upon a specific rule of court as support for its dismissal of the case.

In *Eash,* the Court of Appeals for the Third Circuit decided that a District Court had the authority to order an attorney to pay the Government the cost of impaneling a jury as a sanction for the attorney's abuse of the judicial process. The court in *Eash* set forth an analysis of the historical use of the term "inherent power," stating that the term had been used in three general fashions. *Eash v. Riggins Trucking Inc. v. Commissioner,* 757 F.2d at 560-564. The first use of that term was referred to by the court as "irreducible inherent authority," and the second use of that term was referred to by the court as those "powers 'necessary to the exercise of all others.'" 757 F.2d 562. The third use of the term "inherent power" was referred to as "powers necessary only in the practical sense of being useful." 757 F.2d 563. The discussion in *Eash* of the three uses of the term "inherent power" apparently was set forth to identify the various sources of inherent power and to analyze the ability of Congress to affect the courts' inherent power through legislation.

After summarizing a portion of *Eash,* the dissent suggests that the power is within the third category of inherent power set forth in *Eash.* The dissent then states, "The inherent powers recognized in our rules and by our actions are only those which enable the Tax Court to operate—*those which arise out of necessity and are essential to performance of our statutory responsibilities.*" (Emphasis supplied.) The quoted sentence from the dissent appears to suggest that our Rules and decisions do not indicate specifically that we have any powers that are within the third category. To the contrary, our Rules set forth specific powers that fall within the third category. For example, our Rules allow us to order the payment of counsel fees in specific situations. Rules 33(b), 70(e)(2), 81(g)(2), 90(d)(2), 104(c)(4), 121(f).[3] The power to award attorney's fees is given as an example by the court in *Eash* of powers falling within the third category. *Eash v. Riggins Trucking Inc.,*

---

[3] These Rules are not based upon the specific delegation of power by Congress under sec. 7430 to award litigation costs or under sec. 7456(e), as amended and redesignated as sec. 7456(c) by secs. 1555(a) and 1556(b)(1), Pub. L. 99-514, 100 Stat. 2754-2755, to punish contempt of this Court's authority by fine. Nevertheless, these Rules are justified as an exercise of power pursuant to sec. 7453 or, alternatively, as an exercise of inherent power.

757 F.2d at 563, citing *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 259 (1975).

I also take issue with the dissent's assertion that the majority's action in these cases is not taken for the purpose of protecting our process from abuse. Petitioner's attempt to litigate the cases at bar while he remains a fugitive from justice is offensive. Allowing petitioner to litigate in this Court at *his* discretion would undermine the dignity of this Court and the Federal judicial system as a whole, and would therefore undermine the position of respect occupied by both this Court and the judicial system. Thus, dismissal of the instant cases does protect our process from abuse. Moreover, to the extent article III courts apply Molinaro to encourage a fugitive to submit to the jurisdiction of the judicial system in a criminal case or otherwise enforce a court's jurisdiction in a criminal case, we would frustrate the policy underlying the action taken by those courts by giving the fugitive an alternate forum in which to litigate his civil case.[4]

The dissent also cites *Estate of Rosenberg v. Commissioner,* 73 T.C. 1014 (1980), as support for the argument that we lack the power to dismiss a case because a petitioner is a fugitive. In *Estate of Rosenberg,* the taxpayer filed its petition with this Court more than 90 days after the notice of deficiency was mailed to it. The taxpayer argued that we should exercise jurisdiction over its case based upon "principles of justice and fairness," even though section 6213 required that it file its petition *within* 90 days after a notice of deficiency was mailed to it. *Estate of Rosenberg v. Commissioner,* 73 T.C. at 1016-1017. We held that we could not apply equitable principles to expand our jurisdiction beyond the limits of section 6213. See also *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418 (1943) (Supreme Court determined that equitable principles could not be applied to expand our jurisdiction where Congress had placed specific statutory limitations thereon).

---

[4]It is not a prerequisite to the application of *Molinaro* that a litigant in a civil case be a fugitive from the court in the jurisdiction in which he seeks to litigate the civil case. For instance, in *Doyle,* the U.S. District Court for the District of Columbia dismissed a civil case brought by a fugitive from the U.S. District Court for the District of Connecticut, which is in another Federal judicial circuit. *Doyle v. United States Department of Justice,* 494 F. Supp. 842 (D. D.C. 1980), affd. per curiam 668 F.2d 1365 (D.C. Cir. 1981), cert. denied 455 U.S. 1002 (1982).

It is clear that the majority's action in the instant cases does not serve to expand statutory limitations on our jurisdiction. Thus, *Estate of Rosenberg,* as well as *Gooch Milling & Elevator Co.,* is inapposite to the issue involved here.

The dissent seems to imply that we do not have the power to apply any doctrines that are equitable in nature. If that suggestion were correct, then we could not apply the doctrines of waiver, duty of consistency, estoppel, substantial compliance, and abuse of discretion.[5] All of those doctrines are applied by this Court. While we cannot expand our jurisdiction through equitable principles, we can apply equitable principles in the disposition of cases that come within our jurisdiction.[6]

In summary, I conclude that we have the power to dismiss the cases at bar due to petitioner's status as a fugitive from justice.

### Timeliness of Notice

The dissent posits that even if we have the power to dismiss the instant cases, that power is discretionary, and the majority did not exercise the power properly. The dissent bases that criticism on the failure of respondent to argue for dismissal until respondent's initial, post-trial brief.

It is well established that respondent may rely upon a theory if he has provided petitioner with "fair warning" of his intention to proceed under that theory. *Leahy v. Commissioner,* 87 T.C. 56, 64 (1986); *Schuster's Express, Inc. v. Commissioner,* 66 T.C. 588, 593 (1976), affd. per curiam 562 F.2d 39 (2d Cir. 1977); *Rubin v. Commissioner,* 56 T.C. 1155, 1163 (1971), affd. 460 F.2d 1216 (2d Cir. 1972).[7] "Fair warning means that respondent's failure to give petitioner notice of his intention to rely on a particular theory in the statutory notice of deficiency or the pleadings,

---

[5] See generally H. Dubroff, The United States Tax Court—An Historical Analysis 489 (1979).

[6] See generally H. Dubroff, *supra* at 492 ("The redetermination contemplated clearly comprehends a judicial format and in this context it seems entirely appropriate that * * * [the] Tax Court should apply the same doctrines and rules of construction as would any other court.").

Even the Court of Military Appeals, an article I court, applies *Molinaro.* See *United States v. Schreck,* 10 M.J. 226 (1981); *United States v. Smith,* 46 C.M.R. 247 (1973).

[7] See also *Dolin v. Commissioner,* T.C. Memo. 1988-2.

must not have caused harm or prejudice to petitioner in petitioner's ability to prepare [his] case." *William Bryen Co. and Subsidiaries v. Commissioner,* 89 T.C. 689 (1987). See also *Schuster's Express v. Commissioner, supra* at 593-594; *Rubin v. Commissioner, supra* at 1163. In *Leahy,* we recognized that an argument may not be made for the first time on brief unless it is shown that there is neither surprise nor need for additional evidence to be presented. Here, there appears to be no surprise—petitioner argued the issue in his reply brief and failed to object. The only evidence necessary to our legal determination (i.e., that petitioner is a fugitive from justice) was stipulated into the record. Moreover, Rule 41(b)(1) provides that issues may be tried by consent. Even petitioner concedes that we have the power—he only argues that we should not exercise it in these cases because his attorneys appeared in court for the trial.

Thus, it appears that no additional evidence is required to decide the issue and that petitioner has not been prejudiced. The dissent would have us presume such prejudice. For this reason, the dissent believes that petitioner is entitled to a decision on the merits. The majority correctly concludes that petitioner's fugitive status disentitles him to call upon the resources of the Court. See *Molinaro v. New Jersey,* 396 U.S. 365 (1970) (per curiam).

STERRETT, KÖRNER, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, and WELLS, *JJ.,* agree with this concurring opinion.

———————

WHITAKER, *J.,* dissenting: The majority in this case has concluded that we should dismiss the petition notwithstanding the fact that the case has been tried on the merits and submitted. The opinion raises the dual questions of whether we have the power to take this action and if so whether we should so act under these particular circumstances.

It is axiomatic that this Court "has only such jurisdiction as is conferred upon it by statute. It has no jurisdiction to exercise the broad common law concept of judicial power invested in courts of general jurisdiction by Article III of the Constitution." *Estate of Rosenberg v. Commissioner,* 73

T.C. 1014, 1017 (1980), see also *Burns, Stix, Friedman & Co. v. Commissioner*, 57 T.C. 392 (1971). The majority's action is not predicated upon express statutory authority. If we have the power to deny petitioner access to our court, we must support that action upon our inherent powers as do article III courts. See, e.g., *Ali v. Sims*, 788 F.2d 954 (3d Cir. 1986).

The phrase "inherent powers" describes powers which a court possesses irrespective of any specific grant by the Constitution or legislation. Powers which a court possesses only by virtue of a statutory grant are not inherent powers. "The inherent powers of a court do not increase its jurisdiction; they are limited to such powers as are essential to the existence of the court and necessary to the orderly and efficient exercise of its jurisdiction." 20 Am. Jur. 2d Courts, sec. 78 (1965). (Fn. refs. omitted.)

Notwithstanding considerable confusion among the decisions as to the nature of the inherent powers relied upon in particular situations, the Court of Appeals for the Third Circuit in a well-considered opinion has concluded that this generic term includes three separate categories of powers. *Eash v. Riggins Trucking Inc.*, 757 F.2d 557 (3d Cir. 1985). According to that Court, the first of these powers—

stems from the fact that once Congress has created lower federal courts and demarcated their jurisdiction, the courts are vested with judicial powers pursuant to Article III. This use of inherent power, which might be termed irreducible inherent authority, encompasses an extremely narrow range of authority involving activity so fundamental to the essence of a court as a constitutional tribunal that to divest the court of absolute command within this sphere is really to render practically meaningless the terms "court" and "judicial power."

The opinion goes on to say that:

The second, and most common, use of the term "inherent power" encompasses those powers sometimes said to arise from the nature of the court * * * but more often thought to be the powers "necessary to the exercise of all others." [*Eash v. Riggins Trucking Inc., supra* at 562.]

It should be noted that the Court in *Riggins Trucking Inc.* does not support exercise of either of the first two closely related categories on equitable powers; rather, a duly constituted constitutional court has inherently the power to function as a court and to protect its own process.

Examples of these two categories of inherent powers are contempt, disciplining of attorneys, taxation of costs, fixing of counsel fees, compelling discovery, and the attendance of witnesses. While the legislature may regulate in these cases, it may not abrogate these classes of inherent powers. *Michaelson v. United States,* 266 U.S. 42, 66 (1924).

Similarly, our Court has certain inherent powers. Our Rules authorize dismissal of a case for default or failure to obey an order or follow our Rules. Rule 123. Appellate courts have recognized our power to vacate one of our decisions which had become final ( *Kenner v. Commissioner,* 387 F.2d 689 (7th Cir. 1968)), and to allow an intervention. *Sampson v. Commissioner,* 710 F.2d 262 (6th Cir. 1983). The inherent powers recognized in our Rules and by our actions are only those which enable the Tax Court to operate—those which arise out of necessity and are essential to performance of our statutory responsibilities.

By contrast, the third type of inherent power categorized by the Third Circuit is that authority which is necessary in the sense of being useful although not essential to the functioning of the Court. The Third Circuit states that this power is—

"rooted in the notion that a federal court, sitting in equity, possesses all of the common law equity tools of a Chancery Court (subject, of course, to congressional limitation) to process litigation to a just and equitable conclusion." [*Eash v. Riggins Trucking Inc., supra* at 563, quoting *ITT Community Development Corp. v. Barton,* 569 F.2d 1351, 1359 (5th Cir. 1978).]

The United States Supreme Court has described inherent equitable power in the following language:

As we have already seen, and as has been many times declared by this court, the equitable powers of the courts of the United States, sitting as courts of law, over their own process, to prevent abuse, oppression and injustice, are inherent, and as extensive and efficient as may be required by the necessity for their exercise, and may be invoked by strangers to the litigation as incident to the jurisdiction already vested, without regard to the citizenship of the complaining and intervening party. [*Gumbel v. Pitkin,* 124 U.S. 131, 145-146 (1887).]

This Court as a constitutional court has the inherent power to protect its own process from abuse (*Kenner v. Commissioner, supra),* but that is not what is involved in

the case at bar. Petitioner is a fugitive from the process of a U.S. District Court, presumably, but not necessarily, in Pennsylvania. Our denial of access to this Court on the basis of petitioner's fugitive status with respect to an article III court can only be grounded upon something different from those inherent powers which are essential to this court's ability to function because such action by us is "necessary only in the practical sense of being useful." To my mind, it requires exercise of inherent *equitable* powers which I doubt that we possess.[1] It is for these reasons that I have grave doubt that our range of inherent powers includes the power to protect the integrity of a U.S. District Court. See *Estate of Rosenberg v. Commissioner, supra.*

Turning to the second point, if we assume as the majority does, that we do in fact have the inherent power to dismiss a petition because of petitioner's fugitive status, that power is certainly discretionary. In my judgment, this is not a proper case for exercise of that discretion.

Although the parties stipulated to petitioner's fugitive status, respondent did not argue for dismissal until his initial post-trial brief. At that point, the trial court had before it all of the facts necessary to decide this case on the merits. Why respondent chose at that late date to raise the question of the fugitive status as a basis for dismissal is not clear, but one can speculate that respondent may have been concerned that we would shift the burden of going forward to respondent, a burden which respondent may not have carried. Thus the majority's action may be construed as overly generous to respondent. At least one appellate court has held in a different context that:

When, without fraud, a cause has been submitted on the evidence for the final judgment of the court, the trial being completed, it is the duty of the court to proceed to render an appropriate judgment according to the merits of the case. * * * [*Ex parte Alabama Marble Co.,* 113 So. 240, 241 (Ala. 1927).]

Under the circumstances of this particular case, we should exercise our discretion to decide the case on its merits. Quite aside from the question of our power, we

---

[1] For example, it is significant that we lack power to enforce our own decisions since we have no jurisdiction over respondent's refund and collection functions. Had we inherent equitable powers we could mandate refunds and enjoin collection.

should decline respondent's invitation to dismiss. The petitioner is before us through his attorney; respondent has not complained that petitioner's absence has hindered the trial. No order or Rule has been ignored by the petitioner. However much we may be unsympathetic to petitioner's actions, he is entitled to a decision as to his tax liability in this Court.

CHABOT, PARKER, and COHEN, JJ., agree with this dissent.