JON J. EDELMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 8253–87, 887–88.        Filed December 5, 1994.

*Joseph J. Haspel* and *Dennis L. Stein,* for petitioner.
*William L. Blagg* and *Roland Barral,* for respondent.

OPINION

JACOBS, *Judge:* This matter is before the Court on respondent's motions to dismiss these cases based upon petitioner's fugitive status.

By separate notices of deficiency, respondent determined the following deficiencies in, and additions to, petitioner's Federal income taxes:

| Docket No. | Year | Deficiency | Addition to tax sec. 6653(a) [1] | Increased interest sec. 6621(c) |
|---|---|---|---|---|
| 8253–87 | 1979 | $2,604,677 | $130,234 | [2] |
| 8253–87 | 1980 | 1,887,477 | 94,374 | [2] |

| Docket No. | Year | Deficiency | Addition to tax sec. 6653(a)[1] | Increased interest sec. 6621(c) |
|---|---|---|---|---|
| 887–88 | 1981 | 4,789,095 | 239,455 | [2] |

[1] For 1981, the additions to tax for negligence or intentional disregard of rules and regulations are codified under sec. 6653(a)(1) and (2). With respect to 1981, respondent determined an addition to tax equal to 50 percent of the interest due on $1,815,679 pursuant to sec. 6653(a)(2).

[2] 120 percent of the interest due on the deficiency.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue.

## Background

Petitioner resided in Rye, New York, at the time he filed petitions invoking the jurisdiction of this Court. Subsequent to filing his petitions, petitioner was convicted on 31 counts of Federal income tax fraud in violation of section 7206(1) and (2), and one count of conspiracy to defraud the United States in violation of 18 U.S.C. section 371. On July 28, 1993, petitioner began serving a 5-year sentence at the Federal Correctional Institution in Florence, Colorado. On September 23, 1993, he escaped. On September 27, 1993, a warrant was issued for petitioner's arrest. The U.S. Marshals Service has been unable to locate petitioner.

On January 11, 1993, respondent filed motions to compel production of documents in these cases.[1] On January 19, 1993, petitioner filed motions to dismiss, or in the alternative, to enforce a settlement agreement allegedly entered into with respondent. On March 30, 1993, respondent filed objections to petitioner's motions. The Court held hearings with respect to petitioner's motions on June 10, 1993, in New York City and on November 15–17, 1993, in Washington, D.C. The Court was not informed of petitioner's fugitive status until April 7, 1994, when respondent filed motions to dismiss on the basis that petitioner is a fugitive from justice. On May 16, 1994, petitioner filed memoranda of law in opposi-

[1] By order of this Court dated June 10, 1993, respondent's motions to compel production of documents were held in abeyance pending further direction of the Court.

tion to respondent's motions, and on June 8, 1994, respondent filed responses to petitioner's memoranda of law.

## Discussion

It is well established that a court may dismiss the case of a litigant who is a fugitive from justice during the pendency of his case. What has come to be known as the "fugitive dismissal rule" was first applied over a century ago by the U.S. Supreme Court in *Smith v. United States,* 94 U.S. 97 (1876). In that case, an escaped defendant remained at large when his appeal arose before the Court. The Supreme Court dismissed the case, holding that there could be no assurance that any judgment it issued would prove enforceable. See also *Bonahan v. Nebraska,* 125 U.S. 692 (1887).

In addition to "enforceability" concerns, the Supreme Court has authorized dismissal based upon a "disentitlement" theory. In *Molinaro v. New Jersey,* 396 U.S. 365, 366 (1970), the Supreme Court stated:

No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it *disentitles* the defendant to call upon the resources of the Court for determination of his claims. * * * [Emphasis added.]

And in *Estelle v. Dorrough,* 420 U.S. 534 (1975), the Supreme Court upheld the constitutionality of a Texas statute providing for automatic appellate dismissal when a defendant escapes during the pendency of his appeal, unless the defendant voluntarily returns within 10 days. *Estelle* reasoned that dismissal of an appeal of a defendant who flees the jurisdiction serves an important deterrent function and advances an interest in efficient, dignified appellate practice. *Id.* at 537.

Courts have rejected the argument that *Molinaro* applies only to appeals from criminal convictions. E.g., *United States v. Eng,* 951 F.2d 461 (2d Cir. 1991); *Ali v. Sims,* 788 F.2d 954, 958–959 (3d Cir. 1986); *Conforte v. Commissioner,* 692 F.2d 587, 589–590 (9th Cir. 1982), affg. in part and revg. in part on another issue 74 T.C. 1160 (1980); *Doyle v. U.S. Department of Justice,* 494 F. Supp. 842, 845 (D.D.C. 1980), affd. per curiam 668 F.2d 1365 (D.C. Cir. 1981). In fact,

given the plethora of constitutional and statutory procedural protections afforded to criminal defendants but not to civil litigants, it has been stated that *Molinaro* should "apply with greater force in civil cases where an individual's liberty is not at stake." *Conforte v. Commissioner, supra* at 589. Indeed, this Court has previously refused to hear a fugitive's case unless or until the fugitive voluntarily returned to the jurisdiction of the Court. *Berkery v. Commissioner,* 90 T.C. 259 (1988), supplemented by 91 T.C. 179 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989); *Smith v. Commissioner,* T.C. Memo. 1989–325.

Courts have identified four reasons for the fugitive dismissal rule:

First, a decision respecting a fugitive is effectively unenforceable because the fugitive is beyond the control of the court. * * * Second, loss of appellate review is appropriate because the fugitive flouts the judicial process by escaping. Third, a rule of dismissal has the salutary effects of discouraging escape and promoting the efficient operation of appellate courts. Fourth, the delay occasioned by the period of a defendant's flight can prejudice the prosecution should a new trial be ordered after a successful appeal. [Citations omitted.]

*United States v. Persico,* 853 F.2d 134, 137 (2d Cir. 1988), and cases cited therein. It is not necessary to meet all four reasons in order to dismiss a fugitive's case. In the present cases, at least two justifications exist for our invoking the fugitive dismissal rule.

One of the principal reasons for the fugitive dismissal rule is a practical one—where a fugitive is beyond the control of the court, a decision involving him may effectively be unenforceable. In the present cases, as long as petitioner remains a fugitive, and the whereabouts of any assets he may own remain undisclosed, it will be difficult for respondent to collect petitioner's deficiencies and additions to tax.

Another reason for the rule is to protect the court's process from abuse. Here, petitioner's criminal conviction for tax fraud and the adjustments in the notices of deficiency being contested in the proceedings in this Court both arise from petitioner's role in the activities of a tax shelter (known as Arbitrage Management) involving bogus securities trading transactions. In essence, the civil tax deficiencies and additions to tax determined against petitioner are but a continuum of his criminal tax activities. Petitioner escaped from

prison while serving a sentence for his criminal tax violations. His refusal to submit himself to justice for the commission of these tax crimes while at the same time seeking relief from this Court with respect to the related civil tax deficiencies flouts the judicial process. Hence, in our opinion, petitioner should not be entitled to utilize the limited resources of this Court in order to dispute respondent's determination while he remains a fugitive.[2]

Recently the Supreme Court revisited the fugitive dismissal rule under narrower circumstances in *Ortega-Rodriguez v. United States,* 507 U.S. ___, 113 S. Ct. 1199 (1993). In that case, the defendant fled the jurisdiction after his conviction for various drug-related charges but before his initial sentencing in the District Court. The defendant was sentenced in absentia to an imprisonment of 19 years and 7 months, and a warrant for his arrest was issued. He was apprehended and sentenced to an additional 21 months. His sentencing was later reduced to 15 years and 8 months. The defendant then appealed his sentence. The U.S. Court of Appeals for the Eleventh Circuit granted the Government's motion to dismiss the appeal based on the fact that the defendant had been a fugitive from justice from the time of his initial sentencing until he was apprehended 11 months later. The Supreme Court granted certiorari to consider whether dismissal of the appeal was appropriate in these circumstances, where the defendant was no longer in fugitive status at any point during the pendency of his appeal. The Supreme Court reversed the dismissal and remanded the case to the Court of Appeals. On remand, the Court of Appeals held that: (1) The former fugitive's appeal would not be dismissed; and (2) the conviction was subject to reversal for insufficiency of evidence. 13 F.3d 1474 (11th Cir. 1994).

In *Ortega-Rodriguez v. United States,* 507 U.S. at ___, 113 S. Ct. at 1205–1206, 1208, the Supreme Court held that there must be "some connection" between the fugitive status of the litigant and the court invoking the doctrine. The Court added: "We cannot * * * allow an appellate court to sanction

---

[2] In the present case, the filing of the petition preceded flight, a situation in some respects comparable to that in *Molinaro v. New Jersey,* 396 U.S. 365, 366 (1970), where the Supreme Court held that one who invokes the jurisdiction of an appellate tribunal and then flees during the pendency of his appeal has voluntarily waived or disentitled himself to call upon the resources of the court for an adjudication of his claims.

by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings." *Id.* at ___, 113 S. Ct. at 1207. The Court stated that if a defendant absconds prior to filing a notice of appeal, then once he is back in custody and pursuing a timely appeal, his former status as a fugitive may well "lack the kind of connection to the appellate process that would justify an appellate sanction of dismissal." *Id.* at ___, 113 S. Ct. at 1209. The Court rejected an expansion of the fugitive dismissal rule that would permit appellate courts to dismiss an appeal where a defendant's defiance of the judicial system has no connection to the course of appellate proceedings, noting that trial courts are amply armed to protect their own dignity in the face of a defendant's disrespect for their proceedings. *Id.* at ___, 113 S. Ct. at 1207.

In *Friko Corp. v. Commissioner,* 26 F.3d 1139, 1143 (D.C. Cir. 1994), the Court of Appeals interpreted *Ortega-Rodriguez* as follows:

The Supreme Court's opinion in *Ortega-Rodriguez* raises doubts about whether other courts, who are not defending their "own dignity," may nevertheless sanction "an act of defiance that occurred [outside their] domain." A rule allowing even discretionary dismissals for "any conduct that exhibited disrespect for any aspect of the judicial system," the Supreme Court said, "would sweep far too broadly." * * * [Citations omitted.]

The present case is distinguishable from *Ortega-Rodriguez,* which involved a former fugitive who "flees the jurisdiction of a district court, and is recaptured before he invokes the jurisdiction of the appellate tribunal." 507 U.S. at ___, 113 S. Ct. at 1205. The Court held that a litigant's status as a former fugitive did not necessarily have the required connection to the appellate process that would justify an appellate sanction of dismissal. The present case, on the other hand, involves a current fugitive who commits an ongoing wrong by refusing to turn himself in.

Here, a connection exists between the proceedings in this Court and petitioner's criminal conviction for tax fraud. The current proceedings involve a determination of the civil tax liabilities arising from the same transactions that resulted in petitioner's criminal tax conviction. Based upon this connec-

tion, we are satisfied that a rational basis exists for disentitling petitioner from utilizing this Court's resources to redetermine his deficiencies and additions to tax while he remains a fugitive from justice. See *Ortega-Rodriguez v. United States, supra.* We therefore will grant respondent's motions to dismiss these cases based upon petitioner's status as a fugitive. Based upon this same reasoning, we will deny petitioner's motions to dismiss or, in the alternative, to enforce settlement. Because we will grant respondent's motions to dismiss these cases, respondent's motions to compel production of documents are moot.

If, however, within 30 days after this written opinion has been served, petitioner's fugitive status is terminated, and petitioner files motions with this Court to vacate these decisions, we will consider his cases on the merits of the other issues he has advanced.

To reflect the foregoing,

> *Appropriate orders and decisions will be entered for respondent.*

