NOFIO J. PECORARO, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pecoraro v. Commissioner
Docket No. 24126-92
United States Tax Court
T.C. Memo 1995-220; 1995 Tax Ct. Memo LEXIS 226; 69 T.C.M. (CCH) 2644; May 22, 1995, Filed *226 An order denying respondent's motion to dismiss based upon petitioner's fugitive status will be issued. For petitioner: A. Albert Ajubita. For respondent: Stevens E. Moore. HAMBLEN
HAMBLEN
MEMORANDUM OPINION HAMBLEN, Chief Judge: Respondent issued a joint statutory notice of deficiency to Nofio J. Pecoraro, Jr., and Becky L. Pecoraro determining a deficiency in and additions to their Federal income tax for 1987. Counsel for Nofio J. Pecoraro, Jr., filed a timely petition for redetermination on his behalf. [1] The case is presently before the Court on respondent's motion to dismiss based upon petitioner's fugitive status filed pursuant to Rule 123(b). (Section references are to the Internal Revenue Code as amended and in effect for the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure.) *227 Background
Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. On November 8, 1991, a Federal grand jury sitting in the Eastern District of Louisiana returned a 41-count indictment charging Nofio J. Pecoraro, Jr. (petitioner), a.k.a. Nofio Pecora, his mother, Frances S. Pecora, a.k.a. Frances S. Pecoraro, and Lois Burkey with, inter alia, conspiracy, mail fraud, and money laundering. The indictment details a scheme allegedly devised and carried out by petitioner and his mother to perpetrate insurance fraud through a network of interrelated corporations and partnerships. [2] The indictment states that the alleged illegal activity occurred from January 1987 through September 1991. *228 Following the return of the indictment, the U.S. District Court for the Eastern District of Louisiana (the Federal District Court) issued a summons directing petitioner to appear in court to answer the indictment, as well as a warrant for petitioner's arrest. The grand jury returned a superseding indictment on December 10, 1991, and a second superseding indictment on January 14, 1992, relating to the same criminal activity alleged in the original indictment. On September 23, 1992, petitioner's picture, along with identifying information, was published in the Times-Picayune (a newspaper circulated in the New Orleans, Louisiana, area) stating that the FBI had a warrant for petitioner's arrest. There is no indication in the record presented that petitioner is aware of, or was ever served with, either the indictments or the summons and arrest warrant issued by the Federal District Court. The parties agree that petitioner has not been arrested, arraigned, or convicted of the charges set forth in the indictments described above. On the other hand, the record suggests that Frances S. Pecora was arrested, tried, and convicted of various charges set forth in the indictments. The record *229 in Frances S. Pecora's criminal case includes a minute entry respecting a pretrial conference held on December 9, 1991, which states: "The Court has learned this day that Nofio Pecoraro is presently a fugitive, and, therefore, is unrepresented by counsel." The minute entry in question appears to be in the nature of an order of the Federal District Court issued for the purpose of granting an oral motion made by counsel for Frances S. Pecora to continue her criminal trial to a later date. The record includes an affidavit executed by Becky L. Pecoraro which states in pertinent part that she and petitioner became estranged in November 1991. The record also shows that Becky L. Pecoraro obtained a final decree of divorce from petitioner through the District Court for Smith County, Texas, on March 18, 1993. There is no indication that petitioner, who was represented by an attorney ad litem, personally appeared in the divorce proceeding. Respondent issued a joint statutory notice of deficiency to petitioner and Becky L. Pecoraro determining a deficiency in and additions to their Federal income tax for 1987 as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Deficiency
6651(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6661(a)
$ 15,113
$ 3,237
$ 768
50% of the  $ 3,778
interest due
on $ 15,113  *230 The adjustments underlying the deficiency are explained in the notice as follows: A. It is determined that you are not allowed a deduction for bad debts in the amount of $ 30,000.00 as claimed on your 1987 income tax return since it has not been established that this amount is uncollectible or that a valid debt existed. Accordingly, your taxable income is increased by $ 30,000.00 for the 1987 tax year. B. The deduction of $ 80,000.00 shown on your return as a Section 1244 stock loss is disallowed because it has not been established that the stock became worthless within the taxable year, that the requirements under Section 1244 of the Internal Revenue code were met with regard to the stock, nor has the basis of the stock been established. Your taxable income is increased accordingly. NOTE: It is determined that you are liable for self-employment tax for Nofio J. Pecoraro in the amount of $ 2,152.00 for the 1987 tax year. See Schedule 4 for computations.
The record includes a copy of petitioner's 1987 Federal income tax return (filed jointly with Becky L. Pecoraro). The return includes a Schedule C (Profit or (Loss) From Business or Profession) on which petitioner *231 reported a $ 30,000 deduction for bad debts from sales or services. There does not appear to be any further explanation with respect to this item on the return. [3] Petitioner's tax return also includes a Form 4797 (Gains and Losses From Sales or Exchanges of Assets Used in a Trade or Business and Involuntary Conversions) on which petitioner reported a loss of $ 80,000 identified as "SEC. 1244 STOCK -- PORT ORLEANS, INC." As previously mentioned, petitioner's counsel filed a timely petition for redetermination on his behalf. The case eventually was called for trial in New Orleans, Louisiana, on May 16, 1994. Counsel for petitioner *232 appeared at the calendar call and filed a trial memorandum which includes a statement under the heading "EVIDENTIARY PROBLEMS" as follows: "The Petitioner is unavailable to testify at trial due to his fugitive status." At the same time, Carter K.D. Guice, Jr. (specially recognized), appeared at the calendar call and filed a motion to quash subpoena with respect to a subpoena that petitioner's counsel had served on the Federal Bureau of Investigation. The motion to quash subpoena is supported by a memorandum in which petitioner is referred to as "a fugitive, currently at large." [4]
Counsel for *233 respondent appeared at the calendar call and filed the motion to dismiss based upon petitioner's fugitive status presently pending before the Court. Relying on Berkery v. Commissioner, 90 T.C. 259, supplemented by 91 T.C. 179 (1988), affd. without published opinion 872 F.2d 411 (3d Cir. 1989), respondent contends that petitioner is a fugitive from justice and that the petition filed herein should be dismissed under Rule 123(b) pursuant to the so-called fugitive disentitlement doctrine. Specifically, respondent maintains that petitioner's fugitive status is amply demonstrated in the record by virtue of the minute entry appearing on the docket in petitioner's mother's criminal case, the statement included in the memorandum accompanying the motion to quash subpoena filed at the calendar call of this case, petitioner's trial memoranda, and a remark made on the record during the May 16, 1994, calendar call. Petitioner filed an opposition to respondent's motion to dismiss arguing that the motion should be denied on the ground that petitioner is not a fugitive from justice. Citing cases such as Donnell v. United States, 229 F.2d 560 (5th Cir. 1956), *234 and Vesco v. Commissioner, T.C. Memo. 1979-369, petitioner contends that a fugitive from justice is one who absconds with the intent to avoid arrest, prosecution, or incarceration. As petitioner sees it, the record does not support a finding that petitioner is a fugitive from justice, but merely that petitioner's whereabouts are unknown.[5] *235 In the alternative, petitioner asserts that resort to the fugitive disentitlement doctrine is not justified in the instant case because there is no connection between the crimes that petitioner is alleged to have committed and the tax deficiencies in dispute. [6]
Respondent filed a response to petitioner's opposition repeating her prior assertion that petitioner is a fugitive from justice. In addition, while rejecting petitioner's alternative argument that dismissal under the fugitive disentitlement doctrine is only justified where there is a connection between the crimes allegedly committed and the tax deficiencies in dispute, respondent contends that there may be a connection between the criminal acts that petitioner is alleged to have committed and the bad debt deduction disallowed in the deficiency notice. Specifically, respondent argues: The money for the alleged payments on the Port Orleans, Inc. loans may have come from money acquired by petitioner and Frances Pecora in the scheme alleged in the indictments. *236 If such is the case, then there is a "connection" between the conduct alleged in the indictments and the tax liability in this case. Moreover, it is possible, though not alleged in the indictments nor asserted in the notice of deficiency, that petitioner may have unreported income for 1987 from the activities alleged in the indictments.
Discussion
The Supreme Court has long held that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice while his appeal is pending. Molinaro v. New Jersey, 396 U.S. 365 (1970); Bonahan v. Nebraska, 125 U.S. 692 (1887); Smith v. United States, 94 U.S. 97 (1876). In the Molinaro case, the Supreme Court justified its dismissal of the case as follows: No persuasive reason exists why this Court should proceed to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction. While such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant *237 to call upon the resources of the Court for determination of his claims. * * * [Molinaro v. New Jersey, supra at 366.]
The rule of law set forth in Molinaro, known as the fugitive disentitlement doctrine, is supported by a number of considerations including concerns regarding the enforceability of an adverse judgment entered in the fugitive's absence, the deterrent effect that dismissal may have, and the promotion of efficient and dignified judicial proceedings. See Ortega-Rodriquez v. United States, 507 U.S.    , 113 S. Ct. 1199, 1204-1205 (1993). Application of the fugitive disentitlement doctrine has been expanded beyond cases involving appeals from criminal convictions. Specifically, this Court invoked the fugitive disentitlement doctrine to dismiss a petition for redetermination. See Berkery v. Commissioner, 90 T.C. 259, supplemented by 91 T.C. 179 (1988). In Berkery, the taxpayer was indicted (but not arrested) on drug charges relating to his alleged possession of phenyl-2-propanone. The Commissioner later determined deficiencies *238 in the taxpayer's Federal income tax for the years 1980 and 1981 after concluding that the taxpayer failed to report income derived from his alleged drug dealing. Based on facts stipulated by the parties, we concluded that the taxpayer was a fugitive from justice. 90 T.C. at 261 n.3. Further, relying on Molinaro v. New Jersey, supra, and Conforte v. Commissioner, 692 F.2d 587, 589-590 (9th Cir. 1982), affg. in part and revg. in part 74 T.C. 1160 (1980), we exercised our discretion in favor of dismissing the taxpayer's petition for redetermination under the fugitive disentitlement doctrine and entered a decision against the taxpayer. 90 T.C. at 264-265. Although the taxpayer in Berkery was later found not to be a fugitive from justice, the principle of law set forth in that opinion reflects the current view of this Court. See Edelman v. Commissioner, 103 T.C. 705, 708 (1994); Smith v. Commissioner, T.C. Memo. 1989-325; see also Coninck v. Commissioner, 100 T.C. 495, 498 (1993). *239 In considering whether the petition filed herein should be dismissed under the fugitive disentitlement doctrine, we begin with the fundamental question of whether petitioner is a fugitive from justice. Had petitioner escaped from custody after indictment or following conviction of the crimes alleged, we would have no trouble classifying petitioner as a fugitive from justice. See, e.g., Edelman v. Commissioner, supra; Smith v. Commissioner, supra.However, the parties are in agreement that petitioner was not arrested, arraigned, or convicted of the charges set forth in the criminal indictments returned against him. Moreover, the record is devoid of any direct evidence that petitioner is aware of, or was ever served with, either the indictments or the summons and arrest warrant issued by the Federal District Court in the criminal case. The majority of the courts passing on the subject have defined a "fugitive from justice" as one who is aware that he is being sought by law enforcement authorities and flees with the intent to conceal himself to avoid arrest, prosecution, or incarceration. See United States *240 v. $ 40,877.59 In U.S. Currency, 32 F.3d 1151, 1156 (7th Cir. 1994); United States v. Morgan, 922 F.2d 1495, 1500 (10th Cir. 1991); United States v. Pole No. 3172, Hopkinton, 852 F.2d 636, 641-642 (1st Cir. 1988); United States v. Wazney, 529 F.2d 1287, 1289 (9th Cir. 1976); Jhirad v. Ferrandina, 486 F.2d 442, 444 (2d Cir. 1973); Donnell v. United States, 229 F.2d 560, 564-565 (5th Cir. 1956); see also Daccarett-Ghia v. Commissioner, T.C. Memo. 1994-594 (holding the taxpayer to be a fugitive from justice where the taxpayer was aware that he was under indictment but made no attempt to submit to arrest). But see United States v. Property Located At 760 SW 1st St., Miami, 702 F. Supp. 575 (W.D.N.C. 1989). Although some courts have held that the commission of a crime along with the accused's absence from the particular jurisdiction is sufficient to support a finding that the accused is a fugitive from justice, they have only done so only where the accused is subsequently *241 found in another jurisdiction. See King v. United States, 144 F.2d 729, 731 (8th Cir. 1944); McGowen v. United States, 105 F.2d 791, 792 (D.C. Cir. 1939). Given the state of the record in this case, and consistent with the authorities cited above, we are unable to conclude that petitioner is a fugitive from justice. As previously mentioned, petitioner disappeared prior to the time that the criminal indictments were returned against him, and he apparently has not been seen or heard from since that time. There is no evidence to support a finding that petitioner is aware that he is either under indictment or wanted by law enforcement authorities. Under the circumstances, we are unable to hold that petitioner absconded with the intent to conceal himself to avoid arrest, prosecution, or incarceration. As previously mentioned, respondent points to the minute entry appearing on the docket in petitioner's mother's criminal case, the statement found in the memorandum accompanying the motion to quash subpoena filed at the calendar call of this case, petitioner's trial memoranda, and a remark made on the record during the calendar *242 call, as evidence that petitioner is a fugitive from justice. Suffice it to say that these matters, whether considered separately or together, simply do not provide a basis for finding that petitioner is a fugitive from justice. Even assuming for the sake of argument that petitioner is a fugitive from justice, we would nonetheless deny respondent's motion to dismiss on the alternative ground that the deficiency determined in this case does not bear a sufficient connection to petitioner's alleged criminal conduct. As recently discussed in Edelman v. Commissioner, supra at 710-711, and Daccarett-Ghia v. Commissioner, supra, proof of such a connection provides a rational basis for applying the fugitive disentitlement doctrine. See Ortega-Rodriguez v. United States, 507 U.S. at    , 113 S. Ct. at 1205-1206, 1208; Friko Corp. v. Commissioner, 26 F.3d 1139, 1143 (D.C. Cir. 1994). We see no connection between the deficiency determined in this case and petitioner's alleged criminal activities. Indeed, respondent simply suggests that a connection may exist if evidence develops *243 that: (1) Payments on the Port Orleans, Inc. loans came from money acquired by petitioner and Frances Pecora in the scheme alleged in the indictments;or (2) petitioner failed to report income derived from the illegal scheme alleged in the indictments. As we see it, these arguments amount to nothing more than speculation or conjecture. In sum, although petitioner's disappearance in November 1991 may be a well-orchestrated ruse to avoid arrest and prosecution, the record simply does not support such a finding at this time. Under the particular circumstances presented, we are not persuaded that dismissal pursuant to the fugitive disentitlement doctrine is justified. To reflect the foregoing, An order denying respondent's motion to dismiss based upon petitioner's fugitive status will be issued. Footnotes
1. On Sept. 5, 1991, Nofio J. Pecoraro, Jr., executed a document entitled "General Procuration" appointing his mother, Frances S. Pecora, his agent and attorney in fact. The document states that Frances S. Pecora has the authority "to represent him in any and all matters presently pending or hereinafter filed or to be filed with the Internal Revenue Service." Relying on the General Procuration, Frances S. Pecora retained A. Albert Ajubita to represent her son in this matter. Becky L. Pecoraro did not file a petition for redetermination.↩
2. The various entities identified in the indictment as being controlled by petitioner and his mother include: A company known as Certified Lloyd's Insurance Plan; FSP, Inc.; Live Oak Underwriters, Inc.; Live Oak Acceptance Corp.; and Hunter Financial Assistance Corp.↩
3. The petition filed in this case includes allegations that the bad debt deduction reported on petitioner's 1987 tax return relates to loan guarantees and other amounts that petitioner advanced to Port Orleans, Inc., a corporation purportedly organized in Texas in 1986 for the purpose of conducting a restaurant operation. The petition alleges that the said restaurant business failed in 1987.↩
4. The subpoena in question, served on Special Agent Steven Vogle of the Federal Bureau of Investigation, was returnable at the May 16, 1994, calendar call of this case. Special Agent Vogle was not required to testify at the trial session in question, and the Court took the Government's motion to quash subpoena under advisement. Because the subpoena is no longer effective, we will deny the motion to quash subpoena as moot.↩
5. Petitioner's opposition includes an explanation that petitioner's counsel used the term "fugitive" in his trial memorandum as a generic reference to "a person whose whereabouts or whether alive or dead is unknown and is also being sought by the authorities for alleged crimes." In light of petitioner's prolonged absence and the suggestion that petitioner might be deceased, the Court issued an order dated Nov. 16, 1994, directing the parties to address the question of whether petitioner might be presumed dead under Louisiana State law and the impact, if any, that such a presumption would have on petitioner's capacity to prosecute an action in this Court. Based on the parties' responses to the Court's order, we are persuaded that Louisiana State law would not provide for a presumption of death under the circumstances presented.↩
6. On Dec. 19, 1994, we filed petitioner's motion for leave to file motion to compel stipulation and lodged the underlying motion to compel stipulation. As explained in more detail below, we are inclined to deny respondent's motion to dismiss based on petitioner's fugitive status. Consequently, we will deny petitioner's motion for leave as moot.↩