Johnny **DACCARETT–GHIA**, Alleged Alter Ego or Nominee of Friko Corporation, Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE SERVICE,** Appellee.

No. 95–1029.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1995.

Decided Nov. 28, 1995.

---

Isidoro Rodriguez, Barranquilla, Columbia, argued the cause and filed the brief for appellant.

Sally J. Schornstheimer, Attorney, United States Department of Justice, argued the cause for appellee, with whom Loretta C. Argrett, Assistant Attorney General, Gary R. Allen and Gilbert S. Rothenberg, Attorneys, Washington, DC, were on the brief.

Before: EDWARDS, Chief Judge, WALD and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

This case concerns the proper scope of the "fugitive disentitlement doctrine" in light of the Supreme Court's decision in Ortega–Rodriguez v. United States, 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). In the proceedings below, the Tax Court dismissed appellant's petition for redetermination of certain taxes that he allegedly owes the federal government. It did so because appellant has not appeared in a New Jersey federal court to answer a criminal indictment that involves the same funds as the tax obligation. We reverse. While we agree with the Tax Court's conclusion that the subject matters of the criminal and tax proceedings are related, Ortega–Rodriguez requires something more, a connection between appellant's failure to appear in the criminal matter and the conduct of the Tax Court's proceedings. In this case, however, there is nothing in the record to show that appellant's failure to appear has had any adverse effect either on the Tax Court institutionally or on appellee Commissioner of the Internal Revenue Service as a litigant. The Tax Court therefore had no authority to dismiss the petition.

## I. BACKGROUND

### A. The Fugitive Disentitlement Doctrine

In several cases, the Supreme Court has recognized that a court may dismiss a fugitive's criminal appeal. The first of these was Smith v. United States, 94 U.S. 97, 24 L.Ed. 32 (1876), in which the Court concluded that the appeal was essentially moot because any judgment would be unenforceable against the absent defendant. See also Eisler v. United States, 338 U.S. 189, 69 S.Ct. 1453, 93 L.Ed. 1897 (1949); Bonahan v. Nebraska, 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887). Nearly one hundred years later, the Court in Molinaro v. New Jersey, 396 U.S. 365, 366, 90 S.Ct. 498, 498–99, 24 L.Ed.2d 586 (1970) (per curiam), reasoned that "[w]hile such an escape does not strip the case of its character as an adjudicable case or controversy, we believe it disentitles the defendant to call upon the resources of the Court for determination of his claims." Additional rationales for the fugitive dismissal were later set forth in Estelle v. Dorrough, 420 U.S. 534, 95 S.Ct. 1173, 43 L.Ed.2d 377 (1975), in which the Court rejected a constitutional challenge to Texas' fugitive-dismissal statute. The Justices sustained the statute on the grounds

that it both discouraged escape and "promote[d] the efficient, dignified operation of the Texas Court of Criminal Appeals." *Id.* at 537, 95 S.Ct. at 1175–76.

None of those decisions, however, expressly articulated the underlying *authority* for this practice, which has come to be known as the fugitive disentitlement doctrine. The first, and only, Supreme Court decision to do so was *Ortega–Rodriguez v. United States,* 507 U.S. 234, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993). In that case, the Eleventh Circuit had dismissed the criminal appeal of an individual who, while he had been a fugitive at one point during the district court proceedings, was back in custody at the time he filed his appeal. The Supreme Court vacated and remanded the case. According to the Court, the fugitive disentitlement doctrine is not unlimited in scope, but extends only so far as a court's authority *to control its own proceedings,* which is both an inherent power and, in the federal circuit courts, embodied in Federal Rule of Appellate Procedure 47. The Court characterized *Smith, Molinaro,* and *Estelle* as cases in which dismissal was justified because the appellant's fugitive status had "some connection" to the appellate process. It further recognized that dismissal would be appropriate if the fugitive's status in some way prejudiced the government as a litigant by, for example, delaying any retrial, in which time the memory of prosecution witnesses could fade. The Eleventh Circuit, however, had not articulated any such connection between its proceedings and the appellant's status as a *former* fugitive, and therefore lacked authority to dismiss the appeal.

It is through the lens of *Ortega–Rodriguez* that we review the Tax Court's decision in this case.

## B. *Facts*

Appellant Johnny Daccarett–Ghia is a citizen and resident of the Republic of Colombia. In February 1990, the United States government indicted him and several other individuals and corporations in the Federal District Court for the District of New Jersey on charges that they had conspired to launder the proceeds of drug sales.[1] A warrant was then issued for his arrest. Though he is aware of both the indictment and the warrant, Daccarett–Ghia has never traveled to the United States to answer them.

Seeking to seize funds in U.S. financial accounts that were allegedly deposited as part of the money-laundering scheme, the government filed civil forfeiture actions in the District of New Jersey and the Eastern District of New York. The New York district court eventually ruled, *inter alia,* that the government could not seize one of the accounts. *See United States v. Daccarett,* 6 F.3d 37, 59 (2d Cir.1993). Before the district court released the account to its corporate owner, however, appellee Commissioner of the Internal Revenue Service took control of it by issuing a Jeopardy Assessment, Levy, and Notice of Deficiency against appellant Daccarett–Ghia. In assessing Daccarett–Ghia's tax liability, the IRS's basic theory proceeds along the following lines: (1) deposits into the account represent the income of "Friko Corporation"; (2) Friko is in reality the "alter-ego"—*i.e.,* a front—for Daccarett–Ghia, who is nominally its Chief Operating Officer; and (3) the funds are therefore Daccarett–Ghia's income, on which he failed to pay taxes. The assessed deficiency totaled $2,093,472, excluding interest.

In October 1992, Daccarett–Ghia petitioned the Tax Court for a redetermination of the deficiency. The Tax Court, however, promptly dismissed the petition without reaching the merits because it viewed him as a fugitive from the New Jersey criminal indictment. *Daccarett–Ghia, Alter–Ego or Nominee of Friko Corp. v. Commissioner,* Tax Ct.Dkt. No. 22854–92, 1994 WL 675537 (Dec. 5, 1994), *vacated in relevant part and remanded,* 26 F.3d 1139 (D.C.Cir.1994). Employing its standard practice in fugitive dismissal cases, the Tax Court noted that it

---

1. For a fuller factual background of the criminal and civil forfeiture proceedings, see *United States v. Daccarett,* 6 F.3d 37 (2d Cir.1993), *cert. denied,* —— U.S. ——, ——, ——, 114 S.Ct. 1294, 1295, 1538, 127 L.Ed.2d 648, 128 L.Ed.2d 190 (1994), and *United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974 (3d Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993).

624

would reopen the petition if Daccarett–Ghia appeared before the District of New Jersey within thirty days of its decision. *Id.* at 3–4.

While Daccarett–Ghia's appeal was pending, the Supreme Court issued its decision in *Ortega–Rodriguez.* A panel of this court then remanded this case to the Tax Court with instructions that it consider whether appellant's failure to appear in the outstanding criminal case had the requisite relationship to its proceedings. We explained:

> There must be "some connection["] ... between the *fugitive status* of the litigant and *the court* invoking the doctrine. Here, it is not apparent what the connection was or what the Tax Court thought it was. The court whose "dignity" has been affronted, whose authority Daccarett–Ghia supposedly flouted, is—according to the Tax Court's analysis—the New Jersey federal court.

*Friko Corp. v. Commissioner,* 26 F.3d 1139, 1143 (D.C.Cir.1994) (emphasis added) (citation omitted). On remand, the Tax Court once again dismissed the petition. *Daccarett–Ghia, Alter Ego or Nominee of Friko Corp. v. Commissioner,* Tax Ct.Dkt. No. 22854–92, T.C.Memo. 1994–594, 1994 WL 675537 (Dec. 5, 1994). The Tax Court held "that there is a connection between the criminal charges pending against petitioner and the tax deficiencies," *id.* at 2, in that "the deficiencies ... are based on deposits to an account that petitioner allegedly used to 'launder' the proceeds of illegal drug sales," *id.* at 16. It further concluded that *Ortega–Rodriguez* was limited to "the propriety of applying the fugitive disentitlement doctrine against a defendant who was no longer a fugitive. In contrast, petitioner in the instant case is attempting to prosecute his petition for redetermination in this court while he remains a fugitive from justice." *Id.* at 15. Therefore, "[s]ound policy concerns dictate that petitioner should not be permitted to selectively choose the benefits and burdens of the U.S. legal system that will apply to him." *Id.* at 16.

Once again, Daccarett–Ghia has appealed from the dismissal of his petition.

## II. PRELIMINARY MATTERS

Before addressing the Tax Court's application of the fugitive disentitlement doctrine to these facts, we examine its power as an Article I court to invoke the doctrine in the first instance, as well as the standard by which this Article III court reviews its decision to do so.

### A. *The Tax Court's Authority to Invoke the Fugitive Disentitlement Doctrine*

Appellant contends that the Tax Court does not have authority to invoke the fugitive disentitlement doctrine. As a threshold matter, we note that appellant did not raise this issue until oral argument in the present appeal, and can be held to have waived it unless it raises a question of jurisdiction. Moreover, it bears noting that our previous decision in this case assumed that the Tax Court had that power, which may constitute the law of this case. *See, e.g., McKesson Corp. v. Islamic Republic of Iran,* 52 F.3d 346, 350–51 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 704, —— L.Ed.2d —— (1996); *Crocker v. Piedmont Aviation, Inc.,* 49 F.3d 735, 739–40 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 180, 133 L.Ed.2d 118 (1995). However, because the question is likely to recur and can be handled readily, we elect to address the issue, and rule that the Tax Court does have such power.

The Tax Court's inherent and statutory powers to dismiss a case in the exercise of its control over the conduct of its judicial business have never heretofore been questioned, and we do not now conceive of any rational basis for doing so. *See, e.g., Smith v. Commissioner,* 926 F.2d 1470, 1475–76 (6th Cir. 1991) (approving of power to dismiss claims under Tax Court Rule 123(b)); *Ducommun v. Commissioner,* 732 F.2d 752, 754 (10th Cir.) (same; "[I]t is well established that every court has the inherent power, in the exercise of its discretion, to dismiss a case for want of prosecution...."), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983); *Conforte v. Commissioner,* 692 F.2d 587, 589–90 (9th Cir.1982) (same; fugitive disentitlement case), *stay denied,* 459 U.S. 1309, 103 S.Ct. 663, 74 L.Ed.2d 588 (1983) (Rehnquist, J., in chambers); *see also Gold-*

*smith v. United States Bd. of Tax Appeals,* 270 U.S. 117, 122, 46 S.Ct. 215, 217, 70 L.Ed. 494 (1926) (even before being accorded status of Article I court, Tax Court possessed inherent powers of quasi-judicial body); *Louisville Builders Supply Co. v. Commissioner,* 294 F.2d 333, 339 (6th Cir.1961) (same).

Appellant's argument to the contrary consists of an analogy to another power of the Tax Court—the power to hold individuals in contempt. Unlike Article III courts, which possess an inherent contempt power, the Tax Court's contempt authority arises from a specific statutory grant. *See* 26 U.S.C. § 7456(c). Appellant reasons that, similarly, the Tax Court is powerless to apply the fugitive disentitlement doctrine absent express congressional authorization. Assuming *arguendo* that appellant is correct in that premise, we conclude that there *is* statutory authority for the Tax Court's application of the fugitive disentitlement doctrine. The Tax Court invokes the doctrine based on its Rule 123(b), which authorizes dismissal of a case "for ... cause which the Court deems sufficient." *See Berkery v. Commissioner,* 90 T.C. 259, 265, 1988 WL 10160, *vacated on other grounds,* 91 T.C. 179, 1988 WL 77545 (1988), *aff'd without op.,* 872 F.2d 411 (3d Cir.1989); *id.* at 267 (Hamblen, J., concurring). Rule 123(b), in turn, was promulgated pursuant to 26 U.S.C. § 7453, which expressly provides that the Tax Court may enact rules to govern its proceedings. Section 7453 thus, at a minimum, authorizes the Tax Court to promulgate Rules—such as Rule 123(b)—reasonably necessary to the orderly functioning of its own practice. When appropriately applied in the manner we describe *infra,* the Tax Court's fugitive dismissal rule satisfies that standard.

**B.** *Our Standard of Review*

■ Having recognized the Tax Court's power, as an Article I court, to apply the fugitive disentitlement doctrine, we must address our power, as an Article III court, to review its determination to do so. We noted in our earlier decision in this case that the Tax Court is not required to adopt the same fugitive dismissal standards that we would apply to this court and the district court for this circuit. *See Friko Corp.,* 26 F.3d at 1143. In adopting its own standards, however, the Tax Court may not exceed its authority under 26 U.S.C. § 7453, which—like Federal Rule of Appellate Procedure 47—is limited to maintaining control over the court's own docket and proceedings. *Compare* 26 U.S.C. § 7453 (*"[T]he proceedings of the Tax Court and its divisions shall be conducted in accordance with such rules of practice and procedure ... as the Tax Court may prescribe."* (emphasis added)) *with* FED. R.APP.P. 47 ("Each court of appeals ... may from time to time make and amend rules *governing its practice* not inconsistent with these rules. In all cases not provided for by rule, the courts of appeals may *regulate their practice* in any matter not inconsistent with these rules." (emphasis added)).

■ For that reason, *Ortega–Rodriguez* governs the Tax Court's invocation of the fugitive disentitlement doctrine. While the Supreme Court there reviewed the decision of an Article III court, its reasoning applies equally to all federal courts' efforts to invoke the doctrine to govern their own proceedings.[2] Even though the standard of review that *Ortega–Rodriguez* applies to dismissals by Article III courts is reasonableness, 507 U.S. at 249–51, 113 S.Ct. at 1209, and the standard of review for Tax Court dismissals

---

**2.** Both the Tax Court and Article III courts acknowledge that the doctrine is based on their authority to control their own proceedings. *Ortega–Rodriguez,* 507 U.S. at 242–46, & n. 15, 113 S.Ct. at 1205–06 & n. 15; *Berkery,* 90 T.C. at 266 (Hamblen, J., concurring) (drawing express comparison between Article III inherent authority to dismiss fugitive's claim and Tax Court authority under Rule 123(b)). It is thus not surprising that the Tax Court uniformly analyzes fugitive dismissal cases in terms of Article III precedents. *E.g., Pecoraro v. Commissioner,* T.C.Memo. 1995–220, 1995 WL 311334 (1995);

*Coninck v. Commissioner,* 100 T.C. 495, 1993 WL 186008 (1993); *Biederstadt v. Commissioner,* T.C.Memo. 1989–235, 1989 WL 49314 (1989); *Berkery, supra; Vesco v. Commissioner,* T.C.Memo. 1979–369, 1979 WL 3421 (1979). Even when the Tax Court states that it is invoking the doctrine as a matter of discretion, it cites Article III cases. *E.g., Berkery,* 90 T.C. at 264 (citing *Molinaro v. New Jersey,* 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970) (per curiam); *Bonahan v. Nebraska,* 125 U.S. 692, 8 S.Ct. 1390, 31 L.Ed. 854 (1887); *Smith v. United States,* 94 U.S. 97, 24 L.Ed. 32 (1876)).

under Rule 123(b) is "abuse of discretion," [3] we discern no substantive difference between the two tests. If the Tax Court's effort to protect its own docket would not be "reasonable" under *Ortega–Rodriguez*, it would seem *a fortiori* to constitute an abuse of discretion as well. *Cf. Manzoli v. Commissioner*, 904 F.2d 101, 103 (1st Cir.1990) ("When reviewing under [the abuse of discretion] standard, we will focus on the reasons given by the court for its conclusions to determine whether the Tax Court's determination was reasonable.").

Given that understanding, we now proceed to the merits of the Tax Court's application of the doctrine in this case.

### III. THE SCOPE AND LIMITS OF THE FUGITIVE DISENTITLEMENT DOCTRINE

A. Ortega–Rodriguez's *Interpretation of the Doctrine*

Both the Commissioner and the Tax Court contend that *Ortega–Rodriguez* does not restrict the fugitive disentitlement doctrine in a situation such as this, where Daccarett–Ghia remains a fugitive from federal prosecution even as he pursues his petition for redetermination. They view the *Ortega–Rodriguez* "connection" requirement as an alternative framework applicable only when an individual's fugitive status has ended. There is an intuitive appeal to their interpretation, a recognition that one may not "have her cake and eat it too"; *i.e.*, that individuals should not be able to flee the judicial system and at the same time employ it for their own benefit. In fact, before *Ortega–Rodriguez* was decided, this circuit employed that very rationale in *Doyle v. United States D.O.J.*, 668 F.2d 1365 (D.C.Cir.1981) (per curiam), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1636, 71 L.Ed.2d 870 (1982), in which we affirmed a district court's dismissal of a civil suit be-

cause the plaintiff was a fugitive from a criminal proceeding brought in another district. *See id.* at 1365–66 ("So long as he evades federal authority, . . . it is the general rule that he may not demand that a federal court service his complaint." (citing *Molinaro v. New Jersey*, 396 U.S. 365, 90 S.Ct. 498, 24 L.Ed.2d 586 (1970))). *Ortega–Rodriguez*, however, requires more and, we conclude, supersedes that holding of *Doyle*.[4] *See Dellums v. United States N.R.C.*, 863 F.2d 968, 978 n. 11 (D.C.Cir.1988) ("[I]t is black letter law that a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals.").

■ While the facts of *Ortega–Rodriguez* indeed involved an individual who was no longer a fugitive at the time he filed his appeal, the Supreme Court's discussion of the underlying authority for the federal fugitive dismissal rule governs all invocations of the doctrine. As we have by now stated several times, the Court made clear that the doctrine is grounded in a court's power to control its *own* docket and its *own* proceedings. If the individual's fugitive status has no "connection" to the present proceedings in the sense that it neither affects the court's ability to carry out its judicial business nor prejudices the government as a litigant, the claim may not be dismissed. There is no exception to this rule for individuals who remain fugitives. The Court explained:

> Our review of rules adopted by the courts of appeals in their supervisory capacity is limited in scope, but it does demand that such rules represent reasoned exercises of the courts' authority. Accordingly, the justifications we have advanced for allowing appellate courts to dismiss pending fugitive appeals *all assume some connection between a defendant's fugitive status and the appellate process*, sufficient to

3. *Noli v. Commissioner*, 860 F.2d 1521, 1527 (9th Cir.1988); *Miller v. Commissioner*, 741 F.2d 198, 199–200 (8th Cir.1984); *Ducommun v. Commissioner*, 732 F.2d 752, 753 (10th Cir.1983); *Freedson v. Commissioner*, 565 F.2d 954, 955 (5th Cir.1978).

4. *Doyle* did recognize one universally applied constraint on the fugitive disentitlement doctrine.

Dismissal was appropriate in part because the fugitive's civil suit sought records that were "not devoid of a relationship" to the criminal charges pending against him, *i.e.*, the subject matters of the civil and criminal cases were not completely divorced from each other. 668 F.2d at 1365. Our holding in this case does not disturb that aspect of *Doyle*.

make an appellate sanction a reasonable response.

*Ortega–Rodriguez,* 507 U.S. at 242–46, 113 S.Ct. at 1205–06 (emphasis added) (citation omitted); *accord Branch v. Turner,* 37 F.3d 371, 376 (8th Cir.1994) ("The fugitive dismissal rule is not an end in itself; instead, it is the means of protecting the appellate interests served by the rule."), *rev'd on other grounds sub nom. Goeke v. Branch,* — U.S. ——, 115 S.Ct. 1275, 131 L.Ed.2d 152 (1995); *United States v. Reese,* 993 F.2d 254, 256 (D.C.Cir.1993) (noting that some connection is required). On this point, the Supreme Court was unanimous. *See Ortega–Rodriguez,* 507 U.S. at 252, 113 S.Ct. at 1210 (Rehnquist, C.J., dissenting) ("Although we agree with the Court that there must be some 'connection' between escape and the appellate process, we disagree with the conclusion that recapture before appeal generally breaks the connection."); *id.* at 254, 113 S.Ct. at 1212 ("[A] reviewing court may not dismiss an appeal in the absence of some effect on its orderly functioning.").

■ The government protests adamantly that *Ortega–Rodriguez* expressly recognized that "[i]t has been settled for well over a century that an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of his appeal." *Id.* at 239, 113 S.Ct. at 1203. But this case is a petition for redetermination of taxes, *not* an appeal from the New Jersey criminal case. When an individual appeals his *criminal conviction* while he remains a fugitive, there is a connection between his fugitive status and the appellate proceedings, which is all that *Ortega–Rodriguez* requires. Thus, if Jose Ortega–Rodriguez had still been a fugitive at the time he pursued his criminal appeal, his absence would have flouted the authority of the Eleventh Circuit to carry out its mandate, making dismissal appropriate. But when the party's fugitive status bears no relation to the ongoing proceedings, the court has no authority to order dismissal. *See id.* at 249, 113 S.Ct. at 1208 ("Absent some connection between a defendant's fugitive status and his appeal, as provided when a defendant is at large during the

ongoing appellate process, the justifications advanced for dismissal of fugitives' pending appeals generally will not apply." (citation and internal quotation marks omitted)).

B. *The Relationship Between Appellant's Status and the Tax Court's Proceedings*

■ Under our interpretation of *Ortega–Rodriguez,* we must now determine if the requisite "connection" has been shown to exist between the Tax Court's redetermination proceeding and Daccarett–Ghia's intentional absence from the country. *But cf. United States v. Ortega–Rodriguez,* 13 F.3d 1474, 1476 (11th Cir.1994) (placing burden of proof on defendant-fugitive to disprove relationship between status and proceedings). So far as we can tell, appellant's failure to appear on the New Jersey indictment implicates none of the connections heretofore recognized by the Supreme Court, nor indeed caused any other discernible impact on the Tax Court's proceedings. Despite the invitation to explain any such relationship presented by our earlier remand, the Tax Court and the Commissioner have articulated only a *subject matter connection* between the two cases. Thus, while we agree "that there is a connection between the criminal charges pending against petitioner and the tax deficiencies," *Daccarett–Ghia,* T.C.Memo. 1994–594, at 2, 1994 WL 675537 (1994), that connection does not give rise to the authority to dismiss the petition. Such authority exists only if there is a connection between appellant's *status* and the Tax Court's *proceedings.*

Specifically, Daccarett–Ghia's failure to appear in reference to the New Jersey federal indictment has had no institutional effect on the Tax Court. Appellant's presence was in no way required at the Tax Court's proceedings; for example, he would be perfectly free to pursue his Petition for Redetermination as a foreign national residing outside of the United States. Thus, Daccarett–Ghia's status does not flout the Tax Court's "dignified operation," as in *Estelle v. Dorrough, supra,* or "disentitle" Daccarett–Ghia from calling upon its resources, as in *Molinaro v. New Jersey, supra.*[5] It might have been a differ-

5. *Compare Thompson v. Missouri Bd. of Proba-* *tion & Parole,* 39 F.3d 186, 190 (8th Cir.1994)

ent matter if, for instance, appellant had refused to provide certain discovery material, which the Tax Court viewed as a "significant interference" with its proceedings. *Cf. BCCI Holdings (Luxembourg) Societe Anonyme v. Pharaon,* No. 94–cv–3058, 1995 WL 489426, at *4 (S.D.N.Y. Aug. 11, 1995) ("[B]ecause disclosure of the information requested in defendant's discovery requests could threaten the integrity of the ongoing criminal cases against him, defendant will be barred from obtaining discovery until he appears in the criminal proceedings.").

Further, neither *Smith v. United States, supra,* nor *Ortega–Rodriguez*'s discussion of prejudice to the government is implicated,[6] because the Commissioner has not established that appellant's status jeopardizes the enforceability of the Tax Court's eventual judgment. There may well be circumstances in which an individual's fugitive status would have the collateral effect of blocking the government's access to assets that could otherwise be seized to satisfy a tax deficiency.[7] In fact, the record in this case is ambiguous as to whether the government will be able to collect the taxes if the Tax Court eventually affirms the deficiency. The Tax Court, however, expressly declined to invoke such a rationale in dismissing appellant's petition. *Daccarett–Ghia,* T.C.Memo. 1994–594, at 15–16. Because it is the Tax Court's discretionary authority over its own proceedings that is at issue in this circumstance, we cannot in-

voke a ground for dismissing the petition on which the Tax Court itself chose not to rely.

The Tax Court and the Commissioner argue instead that there is a sufficient connection in the affront to the federal judiciary *on the whole* represented by Daccarett–Ghia's refusal to honor its processes; the district court in New Jersey and the Tax Court in Washington, D.C. are, after all, both parts of the same federal judiciary. *See id.* at 16 ("Sound policy concerns dictate that petitioner should not be permitted to selectively choose the benefits and burdens of the U.S. legal system that will apply to him."); Appellee's Brief at 8 ("The Tax Court properly dismissed taxpayer's case because he is a fugitive from justice and, therefore, is not entitled to use the federal courts to prosecute this appeal."). There is one post-*Ortega–Rodriguez* decision that agrees with their position that "[t]he fugitive disentitlement doctrine limits access to courts in the United States by a fugitive who has fled a criminal conviction in a court in the United States." *In re Prevot,* 59 F.3d 556, 562 (6th Cir.1995); *see also id.* at 566 (invoking "fundamental concerns of how the United States operates its courts and how those courts may react to abuses of American criminal process").

We are not inclined to go that route, however. *Ortega–Rodriguez* itself prohibited the Eleventh Circuit from invoking the affront to one of its own district courts. In doing so, the Supreme Court expressly repudiated any

---

(refusing to apply doctrine "if the escape did not prejudice or impede the present proceeding"), *cert. denied,* —— U.S. ——, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995) *with United States v. Ortega–Rodriguez,* 13 F.3d 1474, 1477 (11th Cir.1994) (concluding that doctrine could be invoked if flight interfered with consolidation of co-defendants' appeals) *and United States v. Reese,* 993 F.2d 254, 256 (D.C.Cir.1993) (same).

**6.** *Cf. United States v. Sudthisa–Ard,* 17 F.3d 1205, 1206 (9th Cir.1994) ("We dismiss the appeal because Sudthisa–Ard's thirteen-year fugitive status prejudiced the government's ability to retry the case in the event of reversal and made meaningful appellate review impossible."); *United States v. Rosales,* 13 F.3d 1461, 1463 (11th Cir.) (invoking doctrine based on five-year delay in any retrial), *cert. denied,* —— U.S. ——, 115 S.Ct. 634, 130 L.Ed.2d 540 (1994); *United States v. Bravo,* 10 F.3d 79, 84–85 (2d Cir.1993) ("Robinson's fifteen-year absence has severely under-

mined the government's ability to assemble witnesses and evidence for any retrial...."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 60 (1994).

**7.** *Compare United States v. $40,877.59 in U.S. Currency,* 32 F.3d 1151, 1156 (7th Cir.1994) ("In forfeiture cases, the claimant's fugitive status does not threaten the integrity of the forfeiture proceeding. The judgment is fully enforceable since the property is in the court's control; the fugitive would suffer the consequences of an adverse adjudication. Nor is his presence needed to conduct an adversarial hearing, and it could not be compelled in a civil action even if he were not a fugitive.") *with Edelman v. Commissioner,* 103 T.C. 705, 1994 WL 675570 (1994) ("[In this tax case, as] long as petitioner remains a fugitive, and the whereabouts of any assets he may own remain undisclosed, it will be difficult for respondent to collect petitioner's deficiencies and additions to tax.").

vision of a unitary federal judiciary in which an affront to any part is viewed as an affront to the whole. *See* 507 U.S. at 246, 113 S.Ct. at 1207 ("We cannot accept an expansion of this reasoning that would allow an appellate court to sanction by dismissal any conduct that exhibited disrespect for any aspect of the judicial system, even where such conduct has no connection to the course of appellate proceedings."); *id.* at 250, 113 S.Ct. at 1209 (rejecting view that would "rest on nothing more than the faulty premise that any act of judicial defiance, whether or not it affects the appellate process, is punishable by appellate dismissal"). The Commissioner would, in effect, have the Tax Court dismiss the petition to punish appellant for his failure to appear in a criminal case pending in another jurisdiction. It is an invitation we must decline.[8] *See id.* at 246, 113 S.Ct. at 1207 ("[I]t is the District Court that has the authority to defend its own dignity, by sanctioning an act of defiance that occurred solely within its domain.").

Of course, we do not hold that a court may never dismiss the civil claim of a litigant who is a fugitive from a criminal case brought in a different jurisdiction. In many such instances, an adequate connection will exist, as with the discovery abuses and concerns over hidden assets just discussed. However, while we do not decide the precise degree of "connection" that *Ortega–Rodriguez* requires between fugitivity and the proceeding being dismissed, mere commonality of subject matter is insufficient.[9]

### IV. CONCLUSION

Because no connection has been shown between appellant's fugitive status and the

Tax Court's proceedings, we conclude that the Tax Court abused its discretion in dismissing appellant's petition for redetermination. Accordingly, we reverse and remand with instructions to proceed to the remaining issues raised by the petition.

*Reversed and remanded.*

---

8. *Compare* Brief for Appellee at 22 ("Any sanction would not be as a result of his *former* status as a fugitive, but rather as a result of his *present* status as a fugitive....") *with Ortega–Rodriguez,* 507 U.S. at 248, 113 S.Ct. at 1208 ("Use of the dismissal sanction as, in practical effect, a second punishment for a defendant's flight is almost certain to produce the kind of disparity in sentencing that the Sentencing Reform Act of 1984 and the Sentencing Guidelines were intended to eliminate." (footnote omitted)).

9. In light of our conclusion that appellant's status lacks the requisite connection to the Tax Court's proceedings, we find it unnecessary to reach the other issues raised by his appeal.

Thus, we do not consider whether appellant was in fact a "fugitive." Our previous decision in this case expressly questioned whether that was an accurate characterization; Daccarett–Ghia alleges that he has "never resided in the United States and took no evasive action to avoid prosecution." *Friko Corp.,* 26 F.3d at 1142. Neither do we address any of the constitutional issues arguably implicated by dismissal in this context. Finally, we do not consider the appropriateness of invoking the doctrine to bar a fugitive from *defending* against a government-initiated civil action. As we noted in our previous decision, the issue remains open in this circuit. *See id.* at 1142–43.