Ernest BROWN, Plaintiff,

v.

DISTRICT OF COLUMBIA,
et al., Defendant.

No. Civ.A. 93–672(RCL).

United States District Court,
District of Columbia.

Sept. 8, 1999.

Daniel McCrea Schember, Gaffney & Schember, Washington, DC, for plaintiff.

William R. Morel, Office of Corporation Counsel, Washington, DC, for defendants.

*MEMORANDUM OPINION*

LAMBERTH, District Judge.

This matter comes before the Court on plaintiff's motion for partial summary judgment and defendants' cross-motion to

dismiss or, in the alternative, for summary judgment. Upon consideration of the motions, the oppositions and other relevant papers, the record in this case, and recent applicable case law, the Court will grant plaintiff's motion for partial summary judgment. The defendants' cross-motion will be denied in part. The Court will also deny as moot plaintiff's pending motion to stay consideration of defendants' cross-motion, and further proceedings will be ordered on a small number of specific issues.

## I. BACKGROUND

On October 12, 1992, plaintiff Brown, then an inmate at a medium-security facility of Lorton prison, got into an altercation with a prison guard, Corporal Parks, over the confiscation of a pack of cigarettes from plaintiff. Plaintiff alleges that he was forcibly confined to his cell by Corporal Parks and another officer, Sergeant Kidwell, and that the two officers beat him with handcuffs on. In response, plaintiff allegedly threw a mixture of urine and feces on Corporal Parks. Plaintiff was subsequently restrained. During a search of plaintiff's cell, Sergeant Kidwell found a "shank" fashioned from a toothbrush. Following the incident and search, Corporal Parks prepared a disciplinary report charging plaintiff with two offenses: Bodily Injury and Threatening Conduct. A copy of the report was given to plaintiff.

The following day, plaintiff was notified that a disciplinary hearing would be held before the Adjustment Board on October 16, 1992 to address the charge of Threatening Conduct as well as one charge of Possession of Major Contraband resulting from the recovery of the shank in his cell. Plaintiff was transferred that same day to administrative segregation at Lorton's Maximum Security Facility.

For reasons never adequately explained to the Court, no hearing was ever held by the Adjustment Board on the charges of Threatening Conduct or Possession of Major Contraband. However, on October 15, 1992, plaintiff was brought before the Lorton Housing Board, the body charged with placing prisoners in administrative segregation. The parties agree that the purpose of the Housing Board hearing was only to determine suitable housing for the plaintiff,[1] not to address the disciplinary charges against him.

Plaintiff alleges, by sworn declaration, that he never received prior notice of the October 15 hearing before the Housing Board. Although the defendant has submitted a declaration executed by the chairperson of the Housing Board, Sergeant Arralean Ellis, that declaration is insufficient to raise any genuine issue of fact on this point because it makes no statement beyond the assertion that, according to standard procedures, Sergeant Ellis "would not have conducted the hearing" without prior notice to the inmate. Declaration of Arralean Ellis at ¶ 5.

Sergeant Ellis's general assertion of the standard procedure cannot create a genuine issue in the face of plaintiff's specific and credible statement that no notice was received, which is supported by strong circumstantial evidence in the record. For example, the Notice of Housing Hearing prepared by Sergeant Ellis includes a place for the inmate to sign, acknowledging receipt of the notice; however, plaintiff's signature does not appear there. Nor does the Notice bear a mark indicating plaintiff's waiver of the standard three-day notice of the hearing, although the Notice was apparently prepared on October 15, the day of the hearing. The defendants have provided no direct evidence to contradict plaintiff's assertion that he never received the Notice until December of 1992, when he obtained it in response to a Freedom of Information Act request.

---

1. Plaintiff, however, asserts that he understood the purpose of the October 15 hearing to be limited to determining a temporary housing status pending resolution of the disciplinary charges against him, while the District maintains that the hearing was to determine a permanent housing status for plaintiff.

This circumstantial evidence strongly supports the credibility of plaintiff's statement, and the Court finds that Sergeant Ellis's statement of standard procedures[2] could not support a finding by the Court or any factfinder that plaintiff did in fact receive notice of the Housing Hearing.

Likewise, plaintiff swears that he was never informed, before or during the October 15 hearing, that the hearing would address charges that he had assaulted an officer. *See* January 26, 1999 Declaration of Ernest Brown. The declaration of Officer Ellis, in the same conspicuously qualified language as the rest of the declaration, states that Officer Ellis "would have read to plaintiff" a memorandum setting forth the charge that plaintiff had assaulted Corporal Parks. Ellis Declaration at ¶ 10. While the Court does not question the integrity or reliability of Officer Ellis, a statement of routine practice is simply insufficient in this context to create a genuine issue of fact in the face of plaintiff's declarations and the supporting circumstantial evidence. For example, even the Notice of Housing Hearing which Sergeant Ellis asserts "would have" been provided to plaintiff identifies no charges or allegations to be considered at the hearing. Moreover, the only recorded statement by plaintiff from the hearing does not address any charges or allegations against him, but simply requests access to a law library. The Court finds that this circumstantial evidence supports plaintiff's version of events to the extent that a contrary finding could not be made on the mere basis of Sergeant Ellis statement of standard practice.

The conclusions of the Housing Board are set forth in a Housing Board Action sheet. That document references an October 5, 1992 fighting incident as well as an "alleged incident involving staff on October 12, 1992." It also states the Board's conclusion that Brown posed a "threat to self and others due to the alleged incident involving correctional staff," concluding with the statement "Resident Brown assaulted Cpl. Parks."

Pursuant to the Board's determination, plaintiff was placed in administrative segregation for a total of ten months.[3] In contrast to the relative freedom of the general population at the medium-security facility, plaintiff's day was tightly controlled in administrative segregation. He was held in solitary confinement, allowed to leave his cell for only two (and later three) hours a day for indoor exercise and to meet with visitors (while fully shackled).

While still in administrative segregation, plaintiff filed this action alleging due process, free exercise, and Eighth Amendment violations. This Court dismissed the due process claim on October 13, 1995, finding that plaintiff had no protected liberty interest implicated by his transfer to administrative segregation at the maximum-security facility. Plaintiff's remaining claims were settled and voluntarily dismissed. Then, on December 16, 1997, the Court of Appeals vacated the dismissal of plaintiff's due process claims and remanded the case back to this Court to determine whether, assuming that plaintiff did have a cognizable liberty interest, he had been afforded adequate process under *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). *See Brown v. Plaut,* 131 F.3d 163 (D.C.Cir.1997).

The Court concludes that plaintiff did not receive adequate process under *Hewitt.* However, given the recent cases from the Supreme Court and Court of Appeals,

---

**2.** It may also be relevant to note plaintiff's specific recollection that, contrary to Sergeant Ellis's assertion that the Housing Hearing occurred in a hearing room at the Maximum Security Facility, the hearing in fact occurred in the hallway between the upper tiers of Cellblock # 6. Plaintiff also states that the hearing was very brief. *See* May 10, 1999 Brown Declaration at ¶ 14.

**3.** There is no evidence in the record that plaintiff's status was reviewed regularly during that period, although he was eventually returned to his previous custody status.

the Court cannot determine if plaintiff had a protected liberty interest without further resolution of one or more factual issues insufficiently developed in the current record. For that reason, the Court will order the parties to submit additional briefing addressing three issues: (1) the District of Columbia's liability, (2) whether the individual defendants are entitled to qualified immunity, and (3) whether ten months is an atypical duration for administrative segregation for an inmate in the District of Columbia prison system serving a sentence comparable to plaintiff's.

## II. LAW AND APPLICATION

The initial question presented for the Court's determination is whether the process afforded plaintiff satisfied the requirements set forth by the United States Supreme Court in *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Because the Court finds the answer to that question to be no, a second question is presented: Did plaintiff have a protected liberty interest in avoiding transfer from the medium-security general population to administrative segregation at the maximum-security facility for a period of ten months? Because this second question cannot be fully answered on the current record, the Court will order the parties to submit further argument and evidence on a number of issues.

### A. *Did Plaintiff Receive the Process Due Under Hewitt?*

In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court explained what procedural safeguards were required to protect the due process rights of a prisoner placed in administrative segregation. Having found that state law in fact created a liberty interest in remaining free from administrative segregation, *see id.* at 470, 103 S.Ct. 864, the Court held that the Due Process Clause required that prison administrators "engage only in an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation," *id.* at 472, 103 S.Ct. 864. The Court clarified that "[a]n inmate must merely receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.... So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied." *Id.* at 476, 103 S.Ct. 864.

■ As the Court of Appeals has written, "*Hewitt*'s requirements are not elaborate, but they are real, and must be strictly complied with." *Brown,* 131 F.3d at 171. After a careful review of the evidence, the Court concludes that plaintiff did not receive the minimal process required by *Hewitt.*

First, the Court cannot find that plaintiff received "some notice of the charges against him." Plaintiff received no prior notice of the October 15, 1992 Housing Board hearing, and there is no indication that he was presented with the charges against him at the hearing other than Sergeant Ellis's assertion that a statement of the allegations "would" have been read to plaintiff, which the Court finds insufficient to create a genuine issue of fact in the face of plaintiff's clear and credible statement to the contrary and the circumstantial evidence supporting plaintiff's statement, such as the absence of plaintiff's signature on the Notice of Housing Hearing. This conclusion is further supported by the agreement of all parties that the Housing Board hearing was never intended to address plaintiff's guilt or innocence of the disciplinary charges against him.

Furthermore, the Housing Board's determination rested at least in part on a finding that plaintiff had assaulted Corporal Parks. Plaintiff, however, was never

given any notice of an assault charge, neither in the disciplinary report nor in the notice of a hearing before the Adjustment Board. Although plaintiff undoubtedly assumed some connection between the incident with Corporal Parks and his transfer to Maximum, he cannot be expected to anticipate charges that were never in fact made against him.[4]

■ Although it appears from the Housing Board Action Sheet that plaintiff did have some opportunity to address the Housing Board at the October 15, 1992 hearing, without some reasonable notice of the issues on which the Board intended to base its decision, plaintiff cannot be said to have received "an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Obviously, the Due Process Clause requires not simply that the prisoner have an opportunity to address the decisionmaker, but that he have an opportunity to address the basis on which the decisionmaker reasonably expects to make its determination. Plaintiff was afforded no such opportunity here.

Although the requirements of *Hewitt* are not rigorous, prison officials must respect them and see that they are enforced, at least where a protected liberty interest is at stake. In this case, whether through administrative error, oversight, or some unidentified cause, plaintiff simply was not afforded the most basic process—an opportunity to know the basis on which a decision will be made and to present his views on that issue or issues.

### B. *Did Plaintiff Have a Protected Liberty Interest?*

■ Because plaintiff did not receive the minimal process required by the Due Process Clause for deprivation of a protected liberty interest, the Court must now determine whether plaintiff in fact had a

protected liberty interest in avoiding ten months of administrative segregation. As the Court of Appeals has noted, this issue is a complicated one, and one with which the courts are currently struggling. Because the factual record in this case is inadequate in some respects, the Court cannot decide the issue today and will order the parties to provide further information to assist the Court in its determination. To expedite and inform those further proceedings, however, the Court will briefly address the current state of the law and its application to this case.

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court abandoned the methodology used by *Hewitt* and other prior cases to determine when state law created a liberty interest protected by the Due Process Clause. Concluding that the prior test was unduly formalistic, the Court shifted the emphasis away from the language of a particular state law provision and placed it squarely on the nature of the deprivation of liberty at issue. *See Hatch v. District of Columbia*, 184 F.3d 846, (D.C.Cir.1999). Stating the reformulated test, the Court wrote that state-law-created liberty interests "will be generally limited to freedom from restraints which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293.

Within the last two months, while this motion was pending, the Court of Appeals has at last addressed the effect of *Sandin* on courts attempting to determine when a state or local law has created a protected liberty interest. In *Hatch v. District of Columbia*, 184 F.3d 846, (D.C.Cir.1999), the Court of Appeals attempted to clarify

---

**4.** Although it is unnecessary to decide the issue here, the Court is skeptical that a reading of the charges at the October 15, 1992 hearing itself (had such a reading occurred) could have been sufficient notice to satisfy the Due Process Clause, even under the relatively forgiving standard articulated in *Hewitt*.

the modifications by *Sandin* of *Hewitt* and similar cases, and remanded the case to the district court for further factfinding. The Court of Appeals held that whether an alleged restraint constituted an "atypical and significant hardship" must be determined by comparing the challenged restraint with "the most restrictive confinement conditions that prison officials, exercising their administrative authority to ensure *institutional safety and good order*, routinely impose on inmates serving similar sentences." *Id.* at 856. The Court of Appeals emphasized that the comparison should focus not only on the conditions of the restraint but also on its duration. *See id.*

Of particular importance to this case, the Court of Appeals in *Hatch* chose administrative segregation as its baseline for comparing the confinement at issue. *See, e.g., id.* Because the appropriate baseline for judging the typicality of a restraint is administrative segregation, it is apparent that the *conditions* of plaintiff's restraint cannot be found to impose an "atypical and significant hardship," for the simple reason that his confinement was not only comparable to but was in fact administrative segregation.

The only remaining question is therefore whether the *duration* of plaintiff's administrative segregation (ten months) imposes an atypical and significant hardship on an inmate serving a sentence comparable to plaintiff's. Unfortunately, as the record now stands, there is insufficient evidence to allow the Court to reach a reasoned and informed conclusion on this issue. Consequently, the Court will order the parties to submit supplemental evidence and argument on this narrow question. Should the parties feel that an evidentiary hearing is necessary, they may submit a written request to the Court.

In addition to the factual issues relating to whether plaintiff has a protected liberty interest, there are two issues of law that have yet to be fully briefed.[5] Therefore, the Court will deny as moot plaintiff's pending motion for a stay and order the parties to complete briefing on the issues of qualified immunity and the District's potential liability.

### III. CONCLUSION

For the reasons set forth above, the Court will grant plaintiff's motion for partial summary judgment, and further proceedings will be ordered on the issue of whether plaintiff had a protected liberty interest. Defendants' cross-motion will be denied as to the adequacy of process received by plaintiff and also insofar as the cross-motion presents an affirmative defense of escape. In addition, plaintiff's pending motion to stay consideration of defendants' cross-motion pending resolution of plaintiff's motion for partial summary judgment will be denied as moot, and the parties will be ordered to complete the briefing of defendant's cross-motion.

---

5. One affirmative defense that has been fully briefed may be disposed of now without further proceedings. The defendants have moved to dismiss plaintiff's action on the ground that he allegedly escaped custody while the case was pending (although it is not disputed that he is currently in federal custody pursuant to another conviction and has so notified the defendants). However, defendants waived this argument by failing to raise it within a reasonable time after the alleged escape, and in any event the defense must fail because the defendants cannot show that plaintiff's alleged escape prejudices their ability to litigate this case or otherwise hinders the Court's ability to carry out its judicial business. *See, e.g., Degen v. United States,* 517 U.S. 820, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *Daccarett–Ghia v. Commissioner of Internal Revenue Service,* 70 F.3d 621, 626 (D.C.Cir.1995).